Elnora J. DUMAS, Plaintiff,

v.

The AGENCY FOR CHILD DEVELOPMENT–NEW YORK CITY HEAD START; the Children's Aid Society; Victor Remer; Philip Coltoff; Lacy Ray, Jr.; Hugh Watkins; and John Doe, Defendants.

No. 81 Civ. 5009(MEL).

United States District Court, S.D. New York.

Sept. 6, 1983.

---

Reid & Priest, New York City, for plaintiff; Peter C. Williams, Janice M. Kelley, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants Agency for Child Development and Lacy Ray, Jr.; Eugene Nathanson, Susan Freedman, New York City, of counsel.

Webster & Sheffield, New York City, for defendants The Children's Aid Society, Victor Remer, Philip Coltoff and Hubert Watkins.

LASKER, District Judge.

This action arises from plaintiff's discharge from her employment as director of the Head Start program operated by defendant The Children's Aid Society ("CAS"). The Head Start program is administered by New York City through the defendant Agency for Child Development ("Agency"). The *pro se* complaint[1] alleges employment discrimination based upon plaintiff's race and sex, charging violations of the Thirteenth and Fourteenth Amendments, 42 U.S.C. §§ 1981, 1983 and 1985, and 42 U.S.C. §§ 9831 *et seq.* (the Head Start statute) and its implementing regulations. The complaint also asserts state law claims for intentional and negligent inflic-

tion of emotional distress and breach of contract.

■ All defendants move to dismiss the complaint on the grounds, *inter alia,* that the federal claims are barred by the applicable statute of limitations, which is the three-year statute of limitations provided in New York Civil Practice Law and Rules ("CPLR") § 214(2) (McKinney 1972).[2] The discharge occurred on August 15, 1975, and this action was not filed until August 12, 1981. Dumas agrees that the applicable limitations period is three years, but argues that the statute was tolled pursuant to CPLR § 208 by her mental disability. CPLR § 208 provides, in relevant part:

"If a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, . . . the time within which the action must be commenced shall be extended to three years after the disability ceases. . . ."

Dumas asserts that her insanity persisted at least through August 1978, three years prior to the filing of her complaint, and therefore that her claims are timely.

■ The toll for disability based on insanity extends to those "who are unable to protect their own legal rights because of an overall inability to function in society." *McCarthy v. Volkswagen of America,* 55 N.Y.2d 543, 450 N.Y.S.2d 457, 460, 435 N.E.2d 1072, 1074 (1982). The person claiming the benefit of the toll must establish that the mental affliction either existed at the time of the accrual of the cause of action, or that it was caused by the event upon which the lawsuit is predicated. *McCarthy, supra,* 450 N.Y.S.2d at 459, 435 N.E.2d at 1074. In addition, the plaintiff must show that the disability was continuous during the period in question; a "lucid

1. Following filing of the complaint and of GAS' answer, proceedings in this case were adjourned in order to provide time for Dumas to obtain an attorney, and on account of health problems suffered by Dumas. Counsel was eventually appointed from this Court's newly-formed Pro Se Panel in December 1982. The Court thanks Reid & Priest for its assistance in this matter.

2. The state claims would then be subject to dismissal as well under the doctrine of *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

period of significant duration" ends the toll. *Graboi v. Kibel,* 432 F.Supp. 572 (S.D.N.Y. 1977); *see Jordan v. State,* 56 Misc.2d 1032, 290 N.Y.S.2d 621, 625–26 (Ct.Cl.1968).

Dumas asserts that her discharge was the precipitating event causing her to become insane within the meaning of the tolling statute. The facts as set forth in her affidavit are that following her discharge she was severely depressed and was unable to look for or obtain a job. In August 1976 she secured a position with Group Health Insurance Inc., as a supervisor in their Home-Maker Service Department. Her condition, however, did not improve and she began to see Dr. Violet E. Stephenson, a psychiatrist at the Bedford-Stuyvesant Community Health Center, in September 1976. She had difficulty meeting the requirements of her job and in April of 1977 became suicidal and was hospitalized at the Brookdale Psychiatric Unit for four days. In March 1978 she was discharged from her job and went to stay at her parents' home in upstate New York. She has not consulted Dr. Stephenson since that time. Thereafter, she was unable to function sufficiently to obtain a job until November 1982.

Dumas has also submitted a report prepared by Dr. Stephenson in February 1983, which presents her evaluation of Dumas during the period of her treatment. When Dumas initially consulted Dr. Stephenson in September 1976, Dr. Stephenson's diagnosis was "schizophrenia, paranoid, chronic with acute exacerbation DSM III 295.34." The report expresses particular concern about Dumas' suicidal tendencies. Dr. Stephenson recommended weekly visits for individual therapy, and medication. She mentions a variety of factors as having led to the initial consultation, not specifically mentioning Dumas' discharge from her CAS job. The report notes Dumas' employment at Group Health Insurance, Inc., and also remarks that Dumas had had analytic training and had three patients to whom she was providing therapy. The report mentions, too, that Dumas had difficulties with her job because the medication she was taking made her drowsy. Dr. Stephenson reports that at the date on which she last saw Dumas, in March 1978 following Dumas' discharge from her job, she was significantly improved.

Defendants argue that Dr. Stephenson's report undercuts Dumas' assertion that her mental illness was caused by her discharge from her job with CAS, since it does not mention the discharge but speaks only of general factors primarily concerning Dumas' family history and "traumatic experiences" occurring during the two years prior to her consultation with Dr. Stephenson. Defendants also argue that the facts concerning Dumas' conduct following her discharge, particularly her employment from August 1976 to March 1978, show that she was not suffering from "an overall inability to function in society." *McCarthy, supra,* 450 N.Y.S.2d at 460, 435 N.E.2d at 1075.

Putting aside the question whether Dumas' mental disability was caused by her discharge, it is apparent that the disability, while causing her serious problems at times, was not of the severe and incapacitating nature contemplated by the tolling statute. The statute speaks in terms of insanity, not merely mental illness, a distinction whose importance the Court of Appeals noted in *McCarthy, supra:*

> "[T]he legislative history of CPLR 208 indicates that the Legislature intended the toll for insanity to be narrowly interpreted. When the CPLR was enacted, the Advisory Committee on Practice and Procedure reviewed the possibility of substituting the phrase 'mental illness' for the term 'insanity' contained in the tolling provision. This suggestion was rejected because of the fear that this change might result in unwarranted extensions of the time within which to commence an action (Fifth Rep. of N.Y.Adv. Comm., N.Y.Legis.Doc., 1961, No. 15, p. 43)."

55 N.Y.2d at 548, 450 N.Y.S.2d at 459,[3] 435 N.E.2d at 1074. Moreover, the burden is on

---

**3.** *Cf. Prude v. County of Erie,* 47 A.D.2d 111, 364 N.Y.S.2d 643 (4th Dep't.1975) (showing of

the plaintiff to establish that she is entitled to the benefit of the toll. *Graboi, supra,* 432 F.Supp. at 580. Taking as true the facts as stated in Dumas' affidavit[4] and the report of Dr. Stephenson, these facts do not establish that Dumas was continuously "insane" within the meaning of CPLR § 208 during the period between her discharge and August 1978.

First, the holding of a full-time job for eighteen months is not consistent with the status of one who is generally incapacitated and unable to function, particularly when the job is not routine or mechanical but that of a supervisor. Moreover, Dr. Stephenson reports, and Dumas' affidavit confirms, that Dumas was seeing patients as a therapist, during and after the period during which Dr. Stephenson was treating her. There is no indication that Dr. Stephenson recommended that Dumas refrain from working in this capacity. Such activities are inconsistent with the claim of continuous mental disability asserted here, even if Dumas experienced difficulties in her job from time to time. Indeed, Dumas continued in her job for nearly a year after the most serious episode she describes, when she was hospitalized for four days in April 1977.[5]

Second, Dr. Stephenson's report does not support the claim that Dumas was so incapacitated during the period in question as to be insane within the meaning of the statute. The report was prepared in February 1983, obviously with reference to the instant litigation, and one would therefore expect it to be as favorable to the plaintiff as the truth permits. The report, nonetheless, does not state or imply that Dumas was incapable of handling her every day affairs throughout the period for which the toll is claimed. Indeed, Dr. Stephenson's final comment on Dumas' condition was that "her appearance had significantly improved" at the time of her last visit to Dr. Stephenson in March 1978.[6]

Although full litigation of a claim is rarely an easy task, the steps that are necessary for filing a complaint and thereby preserving a claim are relatively straightforward. Giving full credit to the facts set forth in Dumas' affidavit and Dr. Stephenson's report, those facts do not establish that Dumas' condition during the relevant period was such as to render the toll for insanity available to her.

For the foregoing reasons, the motions of defendants to dismiss the complaint are granted.[7]

It is so ordered.

---

"mental incapacity" rather than "insanity" is sufficient under General Municipal Law § 50e, which governs the filing of notices of claims against municipalities).

4. Of course, we need not assume the correctness of conclusory assertions such as Dumas' statement that "[t]his affliction left me generally unable to function in society, and I was unable to protect my legal rights in connection with my discharge." (¶ 2).

5. Other cases interpreting CPLR § 208 indicate that a focus on the plaintiff's conduct and activities is appropriate in determining the applicability of the toll. *E.g., McCarthy, supra* (plaintiff's attendance at college, employment as a stock clerk, and participation as a defendant in a lawsuit established as a matter of law that § 208 toll was unavailable; *Graboi, supra* (plaintiff traveled through Europe and held secretarial jobs). By contrast, in *Hurd v. County of Allegany,* 39 A.D.2d 499, 336 N.Y.S.2d 952 (4th Dep't.1972), relied upon by Dumas, the

plaintiff had suffered brain damage as a result of the accident upon which her claim was based, and was unable for a long period even to remember the accident.

6. Moreover, Dr. Stephenson's medical diagnosis of Dumas' condition is not in itself inconsistent with an ability to function in every day affairs. According to the description contained in the Diagnostic and Statistical Manual of Mental Disorders, 3rd Edition ("DSM III"), referred to in Dr. Stephenson's report, "impairment in functioning may be minimal if the delusional material is not acted upon, since gross disorganization of behavior is relatively rare." *Id.* at 191.

7. Because of our determination on the statute of limitations issue, we need not address the remaining arguments for dismissal advanced by defendants.