Durvan MARTIN, Plaintiff,

v.

The CITY OF NEW YORK, the Police Department of the City of New York, and their agents, among them Police Officer "John Krueger," the first name being unknown at the present time, Defendants.

No. 83 Civ. 0808.

United States District Court, E.D. New York.

June 20, 1985.

On Motion for Summary Judgment Aug. 21, 1985.

Lipsig, Sullivan & Liapakis, P.C., Thomas A. Stickel, New York City, for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, John P. Woods and Mary Durante, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff has brought this action pursuant to 42 U.S.C. §§ 1983 and 1985,[1] as well

---

1. Although plaintiff also originally alleged his claims pursuant to 42 U.S.C. § 1981, counsel

as state law, seeking redress for violations of his constitutional rights allegedly committed by defendants.[2] Defendant City of New York ("the City") has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint against it.[3] For the reasons that follow, the City's motion is granted.

*Background*

In this action, plaintiff seeks an award of compensatory and punitive damages[4] totalling $10,020,000 for unlawful acts allegedly committed in connection with plaintiff's arrest and prosecution for the rape and sodomy of Linda Krueger, the daughter of defendant Edward Krueger, which prosecution ultimately resulted in plaintiff's acquittal.

Linda Krueger was attacked at knifepoint on February 26, 1981. On July 6, 1981, while riding in a car with her father, Ms. Krueger identified plaintiff as her attacker. Police Officer Krueger, who is now retired from the New York Police Department, summoned police from the local precinct and arrested the plaintiff. Police Officer Krueger admittedly pushed plaintiff up against a wall and pulled a gun while arresting plaintiff.[5] The only other officers allegedly involved with plaintiff's arrest and subsequent proceedings are Police Officer Gounaris, to whom Linda Krueger described her attacker while hospitalized after the incident, P.O. Policare,

who initially investigated Ms. Krueger's complaint after the incident, P.O. Ciulla, who arrived at the scene of the arrest and subsequently filed a criminal court affidavit based upon the victim's statement, and an unidentified officer who assisted Police Officers Krueger and Ciulla at the scene of the arrest. The more detailed facts surrounding plaintiff's arrest and subsequent state court proceedings are summarized in the undisputed Local Rule 3(g) statement submitted by the City,[6] as well as in the City's memorandum at 1–5 and the Affidavit of Assistant Corporation Counsel John P. Woods.

The complaint, albeit inartfully drawn, alleges seven causes of action: false arrest; punitive damages for false arrest and imprisonment; malicious prosecution; punitive damages for malicious prosecution; negligent hiring, retention and supervision by the City of the defendant officers; assault and conspiracy to violate plaintiff's constitutional rights. Clearly only the fifth and seventh claims are intended to invoke the protection of § 1983 and § 1985 as against the City of New York; the remaining causes of action allege pendent state claims. Because the validity of the federal claims is central to this motion, I shall focus only upon their merits.

Plaintiff's fifth cause of action generally charges the City with the negligent hiring, employment and retention of Police Officer

---

stated at oral argument of this motion that he did not seek to press that aspect of his claims.

**2.** Plaintiff concedes that the New York City Police Department ("NYPD") is not a proper party to this action because it is not a suable entity. Plaintiff's Memorandum at 6. *See Pemper v. City of New York*, No. 83–2612, slip op. at n. 3 (E.D.N.Y. July 2, 1984) (Scheindlin, M.) (citing *Koorin v. Koch*, No. 80–6876 (S.D.N.Y. Aug. 28, 1981)).

**3.** In its reply papers and at oral argument, the City sought dismissal of the complaint as against Police Officers Krueger and Gounaris, upon whom service was purportedly made on May 9, 1985. At the time of oral argument, counsel for the City had not yet appeared on behalf of those officers, and its attempt to move with respect to the officers was also untimely.

Counsel for the City was directed to file a separate, timely motion in accordance with the applicable motion rules should it later choose to do so. Since that time, the Corporation Counsel has so moved on behalf of Krueger and Gounaris.

**4.** Plaintiff concedes that it cannot recover punitive damages against the City, although he still seeks the same against the individual defendants. Affidavit of Thomas A. Stickel at ¶ 21; Plaintiff's Brief at 7.

**5.** City's 3(g) Statement at ¶¶ 13, 14.

**6.** I note that plaintiff's failure to provide a statement of material facts which are in dispute, pursuant to Local Rule 3(g), may in itself be sufficient reason to grant the City's motion for summary judgment.

Krueger, as well as the negligent failure to instruct, supervise and control the individual police defendants. Plaintiff alleges that the City negligently authorized Krueger and other officers to work for the New York Police Department when the City "knew or should have known" that these officers were "incompetent, irresponsible, bore racial bias, were of vicious propensities, and of bad disposition." The New York Police Department is alleged to have had notice of the individual defendants' propensities to so act. Complaint, ¶¶ 88–93.

In the seventh cause of action, plaintiff alleges that defendants' infringement of his first, fourth, fifth and fourteenth amendment rights "resulted from and were taken pursuant to a *de facto* policy of THE CITY OF NEW YORK which is implemented by its police officers, to summarily punish persons of the Negro race who refuse to obey police orders, whether lawful or not, by means of unlawful arrest, excessive use of force and malicious prosecution." Complaint, ¶ 105.[7] This cause of action also charges that the above policy has been known to supervisory and policy-making personnel of the New York Police Department for a substantial period of time, that this policy was "covered up and concealed" from public knowledge and that the above personnel acted with deliberate indifference by not taking steps to terminate the above practices. *See generally id.* at ¶¶ 98–111.

*Discussion*

A. *42 U.S.C. § 1983*

It is well settled that a municipality may not be held liable for damages under § 1983 on a *respondeat superior* basis solely because it employs a tortfeasor; rather, a plaintiff must plead and prove the existence of an official municipal custom, policy or practice which causes the violation of plaintiff's rights. *Monell v. New York City Department of Social Services,*

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Second Circuit has held:

[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. "[T]he mere invocation of the 'pattern' or 'plan' [will] not suffice without this causal link."

*Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) (citations omitted).

In support of its motion for summary judgment, the City has submitted voluminous records from plaintiff's state criminal proceedings, as well as transcripts of the depositions of plaintiff and his mother, Linda Martin. In addition, the City has submitted the affidavit of Richard Koehler, Assistant Chief of the New York Police Department Personnel Bureau, which presents in great detail the process by which the Bureau recruits, selects and investigates applicants for the position of police officer, establishes standards for officer performance and monitors the same. The affidavit also details the training process for officers, as well as means by which officers' conduct is screened during the course of their employment. In addition, the City has submitted evidence that there are no records of the Civilian Complaint Review Board ("CCRB") with respect to Officers Krueger, Ciulla, Policare and Gounaris. Defendant's Exh. G. Magistrate Chrein also received Police Officer Krueger's personnel file and found in it nothing relevant to this lawsuit. *Id.,* Exh. H.

The plaintiff has presented two arguments which he contends present a genuine issue of material fact precluding summary judgment, *i.e.,* which support plaintiff's claims that the City acts pursuant to a policy which violated plaintiff's rights under § 1983. First, the plaintiff offers the recent affidavit of plaintiff's mother, who

---

**7.** The City correctly points out that plaintiff's claims are inconsistent with ¶ 105 of the Complaint, as the plaintiff here was not allegedly "punished" for refusing to obey police officers, but because he was identified, if erroneously, by the victim herself.

witnessed plaintiff's arrest. Therein Linda Martin stated in relevant part:

At a few moments before 9:00 a.m. on July 6, 1981, Police Officer Krueger arrested my son and during the process, struck him with his gun and used excessive force in making the arrest since Durvan did not resist in any way. We were overcome with fright and no force at all was required by Krueger. In addition, he slammed my son into a tree for absolutely no reason.

After my son's arrest, two uniformed police officers arrived. While the three officers spoke with each other, I distinctly heard Krueger state, "My *daughter* was raped. Any nigger will do. I want a 'bust' before I get out."

One of the other officers seeing that I was within earshot, told Krueger, "Don't worry, we've got one, be quiet, she can hear you."

Affidavit of Linda Martin, dated April 9, 1985. Plaintiff asserts that this statement is evidence of a City policy of racial discrimination, here implemented by the arresting officers.

The City has responded to the new Linda Martin affidavit by invoking the well-settled rule that "a party cannot create a material question of fact simply by contradicting testimony given at a deposition." City's Reply Brief at 3. As the Second Circuit has clearly stated: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969); *see also e.g., United States v. Dercacz*, 530 F.Supp. 1348, 1351 (E.D.N.Y. 1982); *Lester v. Pickwick International, Inc.*, 528 F.Supp. 1011, 1013 (E.D.N.Y. 1981). That Linda Martin is not a "party" to this action will not permit her to defeat the City's motion by contradicting her deposition testimony. The City correctly points out that Ms. Martin's recent affidavit directly controverts both the sworn statements of herself and her son, the plaintiff. For example, Ms. Martin's statement that plaintiff was struck by Police Officer Krueger is directly contradicted by plaintiff's deposition testimony. Durvan Martin Deposition at 136, 144. In addition, plaintiff also denied being hit at his § 50(h) hearing. City's Exh. B at 12. Ms. Martin's own deposition testimony is also in conflict with this recent statement. L. Martin Deposition at 13–14, 45, 85–87. The portion of the Linda Martin affidavit asserting the police officers' racist remarks similarly directly contradicts her own deposition testimony. L. Martin Deposition at 24–25, 27. *See* City's Reply Affidavit at ¶¶ 14–18.

The rule set forth by *Perma Research* and its progeny prohibits plaintiff from coming forward with the Linda Martin Affidavit for the purpose of attempting to defeat the City's motion for summary judgment. Even if it were appropriate for the Court to consider her recent statement, summary judgment should still be entered on the City's behalf. This is so because the single instance of the use of force and allegedly racist comment described in this statement cannot be said to establish the existence of a municipal custom, policy or practice which authorizes the practice of racial discrimination by New York Police Department officers. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) (court found no municipal liability under § 1983 absent demonstration of an affirmative link between the occurrence of the various "incidents of police misconduct and the adoption of any plan or policy by [the municipality] ... showing [its] authorization, or approval of such misconduct"); *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied sub nom., Turpin v. City of West Haven*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980) (municipality can be held liable only where it implicitly or tacitly authorizes, approves or encourages harassment by police).

This result is also dictated by the recent decision of the United States Supreme

Court in *City of Oklahoma City v. Tuttle*, — U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (June 3, 1985), rendered during the preparation of this opinion. Reaffirming the principle that "[a]t the very least there must be an affirmative link between the [municipality's] policy and the particular constitutional violation alleged," *id.* at ——, 105 at 2436–37, the Court found that the trial court improperly charged that "a single, unusually excessive use of force may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge." *Id.* at ——, 105 S.Ct. at 2430–31. In its plurality decision, the Court determined that such a charge would permit the jury to hold a municipality liable under § 1983 based on a *respondeat superior* theory—a result prohibited by *Monell.* The Court noted that it was "difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate." *Id.* at ——, 105 S.Ct. at 2436–37. The Court concluded:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise, the existence of the unconstitutional policy, and its origin, must be satisfactorily proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Id.* (footnotes omitted). In this case, the alleged misconduct is clearly less egregious than that challenged in *Tuttle,* and the

plaintiff has made no showing of either an unconstitutional municipal policy or the causal connection which could defeat the City's motion for summary judgment.

■ Although plaintiff has not at this time come forward with any appropriate evidence which would controvert the facts set forth in the Koehler Affidavit, discussed *supra,* plaintiff states as an additional basis for his opposition to the City's motion:

> [P]laintiff will offer expert testimony *at the time of trial* that the customs, policies and practices of the New York City Police Department, during the applicable time frames of P.O. Krueger's career development, involving his hiring, training and supervision, fell far below acceptable standards for the elimination of racial bias and constitutional deprivations. *Time constraints have precluded its inclusion herein.*

Plaintiff's Brief at 5 (emphasis added). It is well settled that once a party seeking summary judgment has come forward with evidence demonstrating that no issue of material fact exists, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The numerous cases reciting this principle need not be cited here; suffice it to say that the party opposing summary judgment, including the plaintiff here, "does not have the right to withhold his evidence until trial." 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2739 at 521 (1983); *Tomarkin v. Ward,* 534 F.Supp. 1224, 1229 (S.D.N.Y.1982). The plaintiff here has "failed to respond in any substantive way" to the documentary evidence which supports the City's argument that the City does not implement a policy which violates § 1983. *Arancibia v. Berry,* 603 F.Supp. 931, 934 (S.D.N.Y.1985) (summary judgment dismissing § 1983 complaint granted where plaintiff did not submit evidence to controvert affidavits of Koehler and Personnel Bureau Inspector Helblock). Thus, it is appropriate for sum-

mary judgment to be entered in favor of the City with respect to plaintiff's claim under 42 U.S.C. § 1983.

### B. *42 U.S.C. § 1985*

██ Plaintiff's seventh cause of action, discussed *supra* at 3–4, purports to raise a claim under § 1985. Although a municipality can be held liable under this statute, again it cannot be held liable based on a *respondeat superior* theory. Just as is required by § 1983, § 1985 requires proof of a municipal custom, policy or practice "stemming from or resulting in a conspiracy implicating the county itself." *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.), *cert. denied sub nom., County of Nassau v. Owens,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).[8] Having found that plaintiff has failed to prove the existence of such a policy in connection with his § 1983 claim, I am compelled to find plaintiff's § 1985 claim inadequate as well.

### Conclusion

For the reasons set forth above, I find that the City is entitled to summary judgment dismissing not only plaintiff's § 1983 and § 1985 claims, but plaintiff's pendent state claims as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Suffolk County Patrolmen's Benevolent Ass'n, Inc. v. County of Suffolk,* 751 F.2d 550, 551 (2d Cir. 1985); *Dunton v. County of Suffolk,* 729 F.2d 903, 910–11 (2d Cir.), *modified on other grounds,* 748 F.2d 69 (2d Cir.1984).

---

**8.** While *City of Oklahoma City v. Tuttle, supra,* —— U.S. at ——, 105 S.Ct. at 2430–31, may be read to overrule the *Owens* court's finding that "a single brutal incident" may be sufficient to suggest a causal link between a municipality's failure to train and a violation of a plaintiff's constitutional rights, 601 F.2d at 1246, such a result would not affect this Court's reliance on *Owens* for the proposition cited in this opinion.

**1.** By Memorandum and Order dated June 20, 1985, I granted summary judgment in favor of defendant City of New York. The Corporation Counsel then appeared on behalf of defendants Lucas Gounaris and Edward Krueger and filed the instant motion on their behalves. At oral argument, the motion for summary judgment was granted on behalf of Gounaris for the reasons stated in the record.

The complaint is therefore dismissed in its entirety as against the City defendant.

SO ORDERED.

### ON MOTION FOR SUMMARY JUDGMENT

Defendant Edward Krueger has moved for summary judgment dismissing the complaint against him. For the reasons set forth below, his motion is granted.[1]

### Background

The facts underlying this action are not in dispute. Plaintiff was arrested by defendant Krueger on July 6, 1981 for the rape and sodomy of Linda Krueger, the daughter of the defendant. He was released on bail on the following day. Plaintiff was acquitted after a jury trial by verdict rendered December 9, 1981.

This action, brought pursuant to 42 U.S.C. § 1983 and state law, was commenced on March 4, 1983 by the filing of a complaint. Although the municipal defendant was served on March 4, 1983, the individual defendants were not served at that time. The numerous discovery disputes regarding the whereabouts of the individual defendants, as well as several other matters, are documented in the record and will not be discussed further. In any event, this Court was first informed of plaintiff's desire to receive the individual defendants' addresses from the City by letter dated October 28, 1983.[2] By letter dated April

---

**2.** Plaintiff's Affidavit of Law in Opposition to Motion for Summary Judgment of the City of New York, Exh. H. According to a letter dated November 1, 1983 from then Assistant Corporation Counsel Sandra Parker to this Chambers (court document # 14), the October 28 letter was also the first time that the Corporation Counsel was made aware of plaintiff's desire to obtain the addresses of Krueger and Gounaris. The November 1 letter also stated: "I additionally brought to the attention of [plaintiff's counsel] that police officer Krueger[,] who had returned from the police force[,] was a named defendant in this action, that he had never been served with the summons and complaint and that this office does not represent him."

26, 1984, the City informed plaintiff's counsel that Krueger and Gounaris could be served care of Mr. Tim Vance of the Legal Department of the New York City Police Department.[3] Less than three weeks later, by letter dated May 15, 1984, the City informed plaintiff's counsel that it could not accept service on behalf of Krueger.[4] The text of that letter reads:

> By letter dated April 26, 1984, I informed you that the New York City Police Department was willing to accept service of papers for Krueger and Gounaris, who have retired from the police force. At that time I mistakenly believed that Krueger still resided in New York City. I have recently learned that Krueger does not reside in New York City, but rather in Florida and for that reason, we cannot [sic] accept service on his behalf. Please let me know if you have any questions concerning this matter.

Following receipt of the above letter, plaintiff's counsel did not seek to compel disclosure of Krueger's address by formal motion. However, after discussions before Magistrate Chrein, the Magistrate issued a combination order on April 29, 1985 directing the City to provide the full name and current full address of Krueger to plaintiff's counsel within two weeks of the date of that order, and issuing an order of protection as to the disclosure of that address. It is undisputed that plaintiff's counsel did receive that address. Notwithstanding the Corporation Counsel's letter of May 15, 1984—nearly one year earlier—plaintiff's counsel attempted to serve Krueger by forwarding a copy of the summons and complaint, by regular mail, to Mr. Vance of the Police Department. To date Krueger has not returned any acknowledgment of service and service upon him in Florida has not been made.[5] The substantive parts of plaintiff's claims are detailed in my Memorandum and Order of June 20, 1985, *supra* note 1, and will not be again reviewed.

The instant motion to dismiss is predicated upon plaintiff's failure to serve Krueger properly, the applicable statutes of limitations and notice of claim requirements, and the merits of plaintiff's claims. In response to defendant's motion, plaintiff has indicated that the only claims which he seeks to press against defendant Krueger at this time are for conspiracy to conceal information from the Grand Jury and/or the District Attorney, allegedly in violation of 42 U.S.C. § 1985, and making racist remarks in the conduct of official police business—allegedly in violation of 42 U.S.C. § 1985, and for malicious prosecution.

*Discussion*

*1. Improper Service*

■ The facts underlying this action support the conclusion that this case may be disposed of on procedural grounds alone. First, it must be noted that service on Krueger has not been made in compliance with either Rule 4(d)(1) of the Federal Rules of Civil Procedure or § 308 of the New York Civil Practice Law and Rules, the statutes applicable to service upon an individual defendant. It is abundantly clear that plaintiff knew as early as May 1984 that the Police Department could not accept service for defendant Krueger; nevertheless plaintiff attempted service in that manner nearly one year later. Thus, this Court has not acquired personal jurisdiction over defendant Krueger.

*2. Statutes of Limitations*

■ Next, it is appropriate to note that counsel for Krueger has improperly designated as one of the grounds for this motion failure to comply with the applicable statutes of limitations. Unlike an action brought purely pursuant New York state law, where an action is commenced by service of a summons and complaint, a

---

**3.** Plaintiff's Opposing Affidavit (City motion), *supra* note 2, Exh. A.

**4.** Reply Affidavit of John P. Woods in Support of City's Motion, Exh. T. It is worth noting that plaintiff's counsel did not submit a copy of this

correspondence when he filed his opposition to the City's motion for summary judgment.

**5.** Woods Reply Affidavit (Krueger Motion), ¶ 5.

federal action is commenced upon the filing of the complaint. Fed.R.Civ.P. 3. The applicable statute of limitations in a § 1983 action is the state limitations period for personal injury actions. *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1947–48, 85 L.Ed.2d 254 (1985). In New York, that period is three years. CPLR § 214. *Rodrigues v. Village of Larchmont,* 608 F.Supp. 467, 477 (S.D.N.Y.1985). The logic of *Wilson* suggests that the same period apply to a cause of action arising under § 1985 and at least one federal court in this Circuit has implicitly done so. *See Dumas v. Agency for Child Development—New York Head Start,* 569 F.Supp. 831 (S.D.N.Y.1983). A claim for malicious prosecution is subject to a one-year limitations period, CPLR § 215, and such a cause of action accrues on the date when the defendant is acquitted.

■ Examining this record for the purposes of determining when plaintiff's remaining causes of action accrued, it is apparent that the § 1983 claim against Krueger arising from the allegedly racist remark made by him while arresting plaintiff accrued on July 6, 1981, the date of the arrest. The accrual date for the malicious prosecution claim is December 9, 1981, the date of plaintiff's acquittal. The date of accrual of plaintiff's purported § 1985 claim, described above, is unclear; however, a liberal application of the statute of limitations would run from the date of acquittal, December 9, 1981.

### 3. Rule 4(j)

In light of the above, it is clear that plaintiff's § 1983 and § 1985 claims were timely when the complaint was filed on March 4, 1983; however, plaintiff's malicious prosecution claim is clearly time-barred. What is apparent, however, is that plaintiff failed to serve defendant Krueger within 120 days after the filing of the complaint as required by Rule 4(j) of the Feder-

al Rules of Civil Procedure, which provides in pertinent part:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Rule 4(j) became effective on February 26, 1983, prior to the filing of this complaint.

■ Construing that portion of defendant's motion based on the statutes of limitations also to invoke the requirements of Rule 4(j),[6] it is apparent that the "good cause" which plaintiff urges should prevent dismissal under this rule arises from the Corporation Counsel's alleged refusal to provide plaintiff's attorney with Krueger's address. Had plaintiff diligently sought to serve Krueger with process, however, he could have moved to compel the Corporation Counsel to disclose the address, or moved, pursuant to CPLR § 308(5) for a court order directing an alternative method of service on Krueger. Neither of these available options was pursued by plaintiff, and Krueger was improperly served more than two years subsequent to the filing of the complaint—and nearly one year after plaintiff's counsel learned that the Police Department could *not* accept service on Krueger's behalf. As plaintiff has not demonstrated good cause for his failure to serve Krueger within 120 days of March 4, 1983, the complaint against him is also dismissable under Rule 4(j).

### 4. The Merits

Even if plaintiff had properly served defendant Krueger, the merits of his § 1983 and § 1985 claims against that defendant

---

**6.** The applicability of Rule 4(j) was discussed briefly at oral argument of this motion. In addition, the arguments raised by plaintiff in opposition to defendant's statute of limitations argument can be construed as reasons why plaintiff had "good cause" for late service under Rule 4(j).

would not survive this motion for summary judgment. The heart of plaintiff's § 1983 claim is a racist remark allegedly made by Krueger, within the hearing of plaintiff's mother, Linda Martin, at the time of the arrest of plaintiff. As discussed in detail in the June 20 Memorandum and Order at 5–7, the only evidence to substantiate that claim, the affidavit of Linda Martin, is insufficient to defeat the instant motion.

As to plaintiff's § 1985 claim, the only paragraphs of the complaint which can be read to support this cause of action (¶¶ 28, 56, 59, 64) against Krueger are part of plaintiff's former false arrest and malicious prosecution claims. Plaintiff's recent allegations that the individual defendants conspired to conceal information from the Grand Jury and/or District Attorney, *supra* at 3, are not alleged in the complaint; more important, the plaintiff has come forward with no facts to substantiate his allegations of conspiracy. It is well-settled that vague and conclusory allegations of a conspiracy are insufficient to state a claim under § 1985; specific facts substantiating such a claim must be set forth, and later proven, by the plaintiff. *See, e.g., Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964); *Bogenmiller v. Stanchfield,* 557 F.Supp. 857 (E.D.N.Y. 1983). The plaintiff here has failed to do either.

*Conclusion*

For the reasons set forth above, defendant Krueger's motion for summary judgment is granted.[7]

SO ORDERED.

---

7. Because judgment has now been granted in favor of all defendants who were or were pur-portedly served in this action, the entry of a final judgment is now appropriate.