Anna **CALLAHAN** and North
Callahan, Plaintiffs,

v.

**THE IMAGE BANK** and Rick
Wysocki, Defendants.

**No. 01 CIV 3688 RWS.**

United States District Court,
S.D. New York.

Jan. 29, 2002.

Haft & Fishbein, New York, NY (Marcia Goffin, of counsel), for plaintiffs.

Vandenberg, Feliu & Peters, New York, NY (Alfred G. Feliu, of counsel), for Defendant Rick Wysocki.

Davis Wright Tremaine, New York, NY (Carolyn Killeen Foley, of counsel), for Defendant The Image Bank.

*OPINION*

SWEET, District Judge.

Defendant Rick Wysocki ("Wysocki") has moved under Rule 12(b)6, Fed. R.Civ.P. to dismiss the complaint of plaintiffs Anna Callahan ("Callahan") and her husband North Callahan ("Mr.Callahan") (collectively the "Callahans"), alleging the intentional infliction of emotional distress. For the reasons set forth below, the motion is granted.

***Prior Proceedings***

The Callahans filed their complaint on May 1, 2001, alleging that Callahan was formerly employed by defendant The Image Bank ("TIB") from October 1992 until January 3, 2000, and that she was supervised by Wysocki from March 1996 through her termination. According to the complaint, during that period Wysocki required her to schedule meetings for him

with an individual who operated an escort service, introduced women to Wysocki, and brought provocative photographs of women to Wysocki's office. The complaint also alleged that during that period Wysocki touched Callahan's waist, pushed his pelvis against her buttocks, asked about her measurements, and leered at her. On July 12, 1999, Mr. Callahan allegedly reported to management that Callahan was ill and unable to report to work. She was granted leave pursuant to the Family and Medical Leave Act, placed on long-term disability, and terminated by TIB on January 3, 2000.

The complaint also alleges that for approximately one year following July 12, 1999, Callahan was unable to leave her home, except to meet with her psychotherapist and physician; unable to work or care for herself; and unable to leave her home unescorted. She allegedly experienced severe side effects from medication and black-outs, resulting in head and bodily injuries; experienced a period of hospitalization in September 2000, arising from the depression; and allegedly suffers from suicidal ideation. Based on these allegations, the Fifth Cause of Action alleges a claim against Wysocki for intentional infliction of emotional distress.

An answer was filed by TIB and the instant motion was made by Wysocki and marked fully submitted on November 7, 2001.

### The Complaint is Barred by the Statute of Limitations

■ A claim for intentional infliction of emotional distress, as an intentional tort, is governed by § 215(3) of the Civil Practice Law and Rules ("CPLR") which requires that an action for an intentional tort be commenced within one year of the alleged injury. *Lamb v. CitiBank, N.A.*, 1994 WL 497275 (S.D.N.Y. Sept.12, 1994) ("It is well established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations."); *Brown v. Bronx Cross County Med. Group*, 834 F.Supp. 105 (S.D.N.Y. 1993); *Anderson v. Yarp Restaurant, Inc.*, 1996 WL 271891 (S.D.N.Y. May 21, 1996); *Peters v. Citibank, N.A.*, 253 A.D.2d 803, 677 N.Y.S.2d 626 (2d Dep't 1998).

■ While the Second Circuit has not definitively addressed whether the filing of an administrative charge with the EEOC tolls the statute of limitations as to all claims arising out of such charge, "[t]he weight of authority ... is against tolling state claims during the pendency of the EEOC claim." *Gardner v. St. Bonaventure Univ.*, 171 F.Supp.2d 118 (W.D.N.Y. 2001) (*citing Walker v. Weight Watchers Int'l.*, 961 F.Supp. 32, 36–37 (E.D.N.Y. 1997); *Hall v. USAir, Inc.*, No. 95–CV–3944, 1996 WL 228458, at *7, *8 (E.D.N.Y. April 29, 1996); *Gray v. Shearson Lehman Bros., Inc.*, 947 F.Supp. 132, 137 (S.D.N.Y. 1996); *Lamb*, 1994 WL 497275, at *8; *Taylor v. Levine*, No. 83–C–4247, 1985 WL 3406, at *2 (E.D.N.Y.Jan.11, 1985)). *See also Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that under the Civil Rights Act of 1866, 42 U.S.C. § 1981, claims are not tolled by the filing of a charge with the EEOC).

■ Callahan was terminated effective January 3, 2000. The complaint in this action was filed May 1, 2001. Because the statute of limitations was not tolled when Callahan filed a charge with the EEOC on August 31, 2000, the one-year statute of limitations mandated by CPLR § 215(3) bars the Fifth Cause of Action.

Callahan seeks to toll the running of the statute on the grounds of her disability, invoking CPLR § 208, which provides a tolling on the grounds of "a disability because of infancy or insanity." Both the Callahans and Wysocki have cited *McCarthy v. Volkswagen of America*, 55 N.Y.2d

543, 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982) as the controlling authority.

In *McCarthy*, the Court of Appeals rejected a claim that "post-traumatic neurosis, manifesting itself in an inability to confront the memory of his accident" constituted the condition of insanity for purposes of Section 208. *Id.* at 547, 450 N.Y.S.2d 457, 435 N.E.2d 1072. The Court noted that the legislative history of Section 208 "indicates that the Legislature intended the toll for insanity to be narrowly interpreted," noting that the Legislature specifically rejected substitution of the term "mental illness" for "insanity" in the drafting process. *Id.* at 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072. The Court concluded that a claim of post-traumatic neurosis did not meet the standard of insanity set by the Legislature under Section 208 and concluded by warning that "a contrary interpretation of the statute could greatly and perhaps inappropriately expand the class of persons able to assert the toll for insanity and could, concomitantly, weaken the policy of the Statutes of Limitation as statutes of repose." *Id.* at 549, 450 N.Y.S.2d 457, 435 N.E.2d 1072.

The *McCarthy* analysis has been strictly applied. *See Eisenbach v. Metro. Transp. Auth.*, 62 N.Y.2d 973, 974, 479 N.Y.S.2d 338, 468 N.E.2d 293 (1984) (hospitalization during which strong pain-killing drugs were administered resulting in the plaintiff being "generally confused, disoriented, and unable to effectively attend to [his] affairs" did not rise to the level of insanity under Section 208); *Smith v. Smith*, 830 F.2d 11, 12 (2d Cir.1987) (Section 208 insanity standard not met where appellant "was suffering from a post-traumatic stress disorder which caused her to re-

press her memories of the incestuous occurrences of her childhood and disabled her from instituting litigation which might stimulate traumatic recall of the childhood events"); *de los Santos v. Fingerson*, 1998 WL 740851 (S.D.N.Y.1998) (Section 208 not satisfied by plaintiff's post-traumatic stress disorder, adjustment disorder, acute stress disorder, and claim that he was unable to function because of an overall inability to function); *Dumas v. Agency for Child Development—New York City Head Start*, 569 F.Supp. 831, 833 (S.D.N.Y.1983) (diagnosis of "schizophrenia, paranoid, chronic with acute exacerbation DSM III 295.34" did not result in tolling under Rule 208 as her disability "was not of the severe and incapacitating nature contemplated by the tolling statute. The statute speaks in terms of insanity, not merely mental illness . . .").[1]

In sum, Callahan has not adequately pled the requirements for a statutory extension of the applicable one-year statute of limitations under Rule 208 and therefore the bar of § 215(3) applies.

This conclusion obviates the need to address the alternative ground for dismissal, failure to allege a cognizable claim of intentional infliction of emotional distress.

### Conclusion

The complaint against Wysocki is dismissed on statute of limitations grounds.

It is so ordered.

---

1. Further, it is significant that Callahan was capable of filing her EEOC charge on August 31, 2000 but failed to file this complaint until May 1, 2001, eight months later. It is also noteworthy that she was able to apply for and

obtain both a Family and Medical Leave Act leave from her employer and long-term disability benefits following her leave in July 1999 and her termination in January 2000.