Louis LUCIANO, Plaintiff,

v.

CITY OF NEW YORK
et al., Defendants.

No. 09 CIV. 00359(DC).

United States District Court,
S.D. New York.

Feb. 16, 2010.

Aaron David Frishberg, Esq., New York, NY, for Plaintiff.

Martin Clearwater & Bell LLP by Gregory J. Radomisli, Esq., New York, NY, for Defendants New York Presbyterian Hospital and Its Employees.

Michael A. Cardozo, Esq. by Bradford C. Patrick, Esq., Corporation Counsel of the City of New York, New York, NY, for City Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

In this civil rights action, plaintiff Louis Luciano alleges under 42 U.S.C. § 1983 and the New York State Constitution that defendants New York Presbyterian Hospital (the "Hospital"), the City of New York (the "City"), Jacqueline Luciano, and Sergeant Gatrell violated his Fourth, Fifth, and Fourteenth Amendment rights when he was involuntarily committed to the Hospital. Plaintiff's federal claims are untimely and must be dismissed. Further, in the absence of original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiff's state law claims and, thus, the entire amended complaint is dismissed.

### BACKGROUND

A. *Facts*

For purposes of this decision, I accept the allegations in the amended complaint as true.

On or about May 4, 2005, plaintiff went to the Thirty–Third Precinct and met with New York Police Department Sergeant Gatrell. (Am. Compl. ¶ 4). Plaintiff told Gatrell that he recently had an argument with his sister, Jacqueline Luciano, who was an employee of the Hospital. In the course of this argument, Jacqueline Luciano threatened to have plaintiff placed in a psychiatric ward, and he threatened to kill her. (*Id.* ¶¶ 4–5). Plaintiff expressed to Gatrell an interest in filing legal charges against his sister. (*Id.* ¶ 5). After speaking with Jacqueline Luciano on the telephone, Gatrell told plaintiff that "he had to seek mental health treatment or he would be locked up." (*Id.* ¶ 6).

After speaking with Gatrell, plaintiff consulted a psychologist and a psychiatrist, both of whom determined that plaintiff was not in need of psychiatric hospitalization. (*Id.* ¶¶ 7–8).

In the time between May 4, 2005, and May 27, 2005, Gatrell was in contact with Jacqueline Luciano on several occasions. (*Id.* ¶ 9). Gatrell and Jacqueline Luciano arranged for two of plaintiff's sisters to sign a paper authorizing Gatrell to transport plaintiff to the Hospital. (*Id.* ¶¶ 12–13). Gatrell and Jacqueline Luciano "tacitly or explicitly agreed to misrepresent ... the facts concerning Plaintiff's mental conditions and his actions to make it appear that he was in need of psychiatric hospitalization and met the criteria for such commitment." (*Id.* ¶ 15).

On May 27, 2005, Gatrell appeared at plaintiff's home and told plaintiff that he could either be hospitalized or sent to jail. (*Id.* ¶ 16). On the same day, plaintiff was certified and admitted to the Hospital as an involuntary psychiatric patient. Plain-

tiff remained in the Hospital until approximately June 2, 2005, when he was released with a clean bill of health.[1]

After his release from the Hospital, plaintiff "was so mentally debilitated and depressed for a period of at least a day as to be unable to function." (*Id.* ¶ 29).

### B. *Procedural History*

Luciano originally brought this action against the defendants named above and also several employees of the Hospital and the City. Luciano alleges that he filed this action on May 28, 2008. There is a time stamp on the complaint noting that the complaint was "received" in the Clerk's night box on May 28, 2008, at 12:03 a.m. In a letter to the Court, Luciano's counsel alleges that the Clerk of the Court originally returned the filing to him as deficient but later, upon being re-presented with the complaint on January 13, 2009, "determined that there was nothing to be corrected and issued the summons." (Frishberg Ltr. of June 6, 2009).

Although this Court's Clerk's Office keeps a record of all documents deposited in the Court's night deposit box and another list of all documents returned to parties, the Clerk's Office advises that no record exists of Luciano depositing anything on or about May 28, 2008, or any filings being returned to him thereafter. Moreover, the docket sheet in this case shows that the action was not commenced until January 13, 2009, when the complaint was filed and a summons was issued. The City provides a copy of a summons that apparently was issued on January 13, 2009, but is inexplicably—and apparently—stamped received by this Court on May 28, 2008, at 12:03

---

1. Plaintiff's amended complaint states that he was released on June 2, 2006. (Am. Compl. ¶ 33). All other filings in this case, however, including plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss,

list plaintiff's release date as June 2, 2005. (Pl. Opp. Mem. 4). The insertion of 2006, instead of 2005, was clearly an inadvertent error.

a.m. The summons and complaint were not served upon the City until March 18, 2009. The complaint filed with the Court was never served on the Hospital, its employees, or Jacqueline Luciano; rather, these defendants were served with an earlier, un-filed version of the complaint.

On June 26, 2009, this Court held a pretrial conference with the parties. During this conference, plaintiff's counsel was unable to explain why several defendants had been served with an earlier, unfiled version of the complaint. Counsel also was unable to articulate any basis for holding the Hospital, its employees, or Jacqueline Luciano liable as state actors under § 1983. Due to plaintiff's inability to articulate a cause of action against these defendants, on July 2, 2009, I ordered plaintiff to show cause in writing why the Court should not dismiss those claims. Plaintiff voluntarily dismissed his claims against a number of individually named Hospital employees and requested leave to file an amended complaint. I granted plaintiff's request, and he filed an amended complaint on August 14, 2009. Defendants then filed the instant motions to dismiss.

## DISCUSSION

The Hospital and Jacqueline Luciano move for dismissal on the following grounds: (1) the Hospital and Jacqueline Luciano may not be sued under § 1983 because they did not act under color of law; (2) plaintiff did not properly serve the Hospital or Jacqueline Luciano with the original complaint; and (3) plaintiff's federal claims are barred by the statute of limitations. The City moves to dismiss the complaint on the following grounds: (1) plaintiff's federal and state claims are untimely; (2) plaintiff's original complaint was not timely served; and (3) plaintiff fails to state a claim upon which relief may be granted. I need only address the question of whether plaintiff's federal claims are timely as that issue is dispositive.

### A. *Motion to Dismiss Legal Standard*

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court in *Iqbal* set out a "two-pronged" approach for courts considering a motion to dismiss. *Id.* at 1950.

First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See id.; see also Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008). Legal conclusions must be supported by factual allegations. *Iqbal,* 129 S.Ct. at 1949. Pleadings that are "no more than conclusions are not entitled to the assumption of truth." *Id.* at 1950.

Second, the court determines whether the allegations "plausibly give rise to an entitlement to relief." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B. *Timeliness of the Complaint*

#### 1. *Applicable Law*
##### (a) *Statute of Limitations*

The parties agree that the statute of limitations for § 1983 claims is three years from the time the cause of action accrues, and that, here, the cause of action accrued when plaintiff was involuntarily hospitalized on May 27, 2005. (Pl. Opp. Mem. at

5; Def. City Mem. at 4; Def. Hosp. Mem. at 5). *See Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994); *Irizarry v. Whittel,* 01 Civ. 10735(DC), 2002 WL 31760240, at *2–3, 2002 U.S. Dist. LEXIS 23669, at **7–8 (S.D.N.Y. Dec. 6, 2002) ("The statute of limitations governing an action under § 1983 is the forum state's statute of limitations applicable to personal injury actions. In New York, the statute of limitations for personal injury actions is three years." (internal citations omitted)). Thus, plaintiff was required under the statute to file his complaint by May 27, 2008.

### (b) *Insanity Toll*

■ Under C.P.L.R. § 208,

[i]f a person entitled to commence an action is under a disability because of ... insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more ..., the time within which the action must be commenced shall be extended to three years after the disability ceases....

N.Y. C.P.L.R. § 208 (McKinney 2008). "The person claiming the benefit of the toll must establish that the mental affliction either existed at the time of the accrual of the cause of action, or that it was caused by the event upon which the lawsuit is predicated." *Dumas v. Agency for Child Dev.–N.Y. City Head Start,* 569 F.Supp. 831, 832 (S.D.N.Y.1983) (citing *McCarthy v. Volkswagen of Am.,* 55 N.Y.2d 543, 450 N.Y.S.2d 457, 459, 435 N.E.2d 1072 (1982)).

■ The toll is construed narrowly and available only to those who are "unable to protect their own legal rights because of an overall inability to function in society." *Id.* (citing *McCarthy,* 450 N.Y.S.2d at 460, 435 N.E.2d 1072). "Indeed, 'apathy, depression, post-traumatic neurosis, psychological trauma and repression therefrom or mental illness alone have been held to be insufficient' without a demonstrated inability to function." *Reyes v. City of New York,* No. 00 Civ. 1050(NRB), 2000 WL 1505983, at *6, 2000 U.S. Dist. LEXIS 14935, at *18 (S.D.N.Y. Oct. 5, 2000) (citations omitted).

### 2. *Application*

Two questions are presented: First, when was this action commenced, i.e., May 28, 2008, or January 13, 2009? Second, is Luciano entitled to invoke the insanity toll?

#### (a) *Date of Filing*

The docket in this case indicates that the complaint was filed and a summons was issued on January 13, 2009, more than seven months beyond the statutory deadline. Plaintiff's counsel submitted a letter to the Court alleging that he in fact filed the complaint in the night drop box on May 28, 2008, that it was mistakenly returned to him by the Clerk's Office, and that on January 13, 2009, upon being "represented" with the complaint, the Clerk's Office acknowledged its error and accepted the filing. (Frishberg Ltr. of June 6, 2009).

First, I reject plaintiff's counsel's assertion that any complaint was filed on May 28, 2008. The docket indicates that the complaint was filed and a summons was issued on January 13, 2009, and the Clerk's Office has no record of a complaint being filed and returned to plaintiff before that time. If the complaint had actually been submitted on May 28, 2008, surely plaintiff's counsel would have objected to the January 13, 2009, docket date; surely plaintiff's counsel would have raised the issue sooner. Even if the Clerk's Office did in fact return the original pleading as defective, it is curious that plaintiff took no steps to remedy the matter until January 2009. This is especially dubious in light of the fact that, had the complaint been filed on May 28, 2008, plaintiff was required by Federal Rule of Civil Procedure 4(m) to

serve the defendants by October 2008. Fed.R.Civ.P. 4(m) (complaints must be served within 120 days of filing). Indeed, having not served any of the defendants by October 2008, plaintiff asks the Court to accept the May 28, 2008, filing date for statute of limitations purposes and the January 13, 2009, date for 4(m) purposes. In light of all these irregularities—including a summons with two dates—and plaintiff's failure to submit any affidavits or evidence explaining these irregularities, I am not persuaded that the case was properly commenced on May 28, 2008. As plaintiff has not alleged that the "insanity toll" extended his time for filing suit until January 13, 2009, the claim is untimely.

### (b) *Insanity Toll*

■ Even assuming this suit was commenced on May 28, 2008, the complaint is still untimely by one day. Plaintiff admits as much, but argues that the statute of limitations was tolled for one day because he was "so mentally debilitated and depressed for the period of at least a day as to be unable to function." (Am. Compl. ¶ 29). For the reasons set forth below, plaintiff's insanity claim is rejected and the complaint is dismissed as untimely.

Here, the allegations asserted in plaintiff's amended complaint do not constitute a plausible claim for tolling under C.P.L.R. § 208. First, although plaintiff states that he was unable to function, he alleges no particulars in support of this conclusion. The conditions plaintiff does describe, such as "anguish, severe emotional trauma, humiliation, distress" and stigmatization (Am. Compl. ¶ 29), have been expressly rejected as insufficient to toll C.P.L.R. § 208 in the absence of a demonstrated inability to function. *Reyes v. City of New York*, No. 00 Civ. 1050(NRB), 2000 WL 1505983, at *6, 2000 U.S. Dist. LEXIS 14935, at *18 (S.D.N.Y. Oct. 5, 2000) (citations omitted); *see also Callahan v. Image Bank*, 184 F.Supp.2d 362 (S.D.N.Y.2002) (declining to

apply toll when plaintiff alleged that for one year she was unable to leave her home unescorted, work, or care for herself); *Irizarry v. Whittel*, No. 01 Civ. 10735(DC), 2003 WL 221736, 2003 U.S. Dist. LEXIS 1286 (S.D.N.Y. Jan. 29, 2003) (upholding dismissal of complaint when plaintiff provided no evidence of temporary insanity for purposes of tolling the statute of limitations). Notably, plaintiff has not alleged any information regarding an inability to handle daily affairs or protect his legal rights, both of which have been considered by courts evaluating an over-all inability to function in society under the statute. *See Monaghan v. SZS 33 Assocs., L.P.*, 827 F.Supp. 233, 242 (S.D.N.Y.1993); *Libertelli v. Hoffman–La Roche, Inc.*, 565 F.Supp. 234, 236 (S.D.N.Y.1983); *de los Santos v. Fingerson*, No. 97 Civ. 3972(MBM), 1998 WL 740851, at **4–5, 1998 U.S. Dist. LEXIS 16657, at **12–13 (S.D.N.Y. Oct. 21, 1998); *Dumas v. Agency for Child Dev.–N.Y. City Head Start*, 569 F.Supp. 831, 834 (S.D.N.Y.1983). Without more, the Court does not accept Luciano's conclusory allegation that he was unable to function. *See Dumas*, 569 F.Supp. at 834 n. 4 (dismissing complaint and noting that the court "need not assume the correctness of conclusory assertions such as [plaintiff's] statement that 'this affliction left me generally unable to function in society, and I was unable to protect my legal rights in connection with my discharge' "); *see also De Los Santos v. Fingerson*, No. 97 Civ. 3972(MBM), 1998 WL 740851, at *4, 1998 U.S. Dist. LEXIS 16657, at *12 (S.D.N.Y. Oct. 21, 1998) ("Nor does plaintiffs' conclusory statement that de los Santos 'was unable to protect his rights because of an overall inability to function,' change matters, as it is well established that courts need not assume the correctness of such conclusory allegations.").

Further, it strains judicial commonsense to accept Luciano's contentions that he was both traumatized by his stay in the Hospital and also completely untraumatized and mentally stable during the course of his commitment there. Indeed, Luciano explicitly alleges that during the time he was committed he was not objectively or subjectively "dangerous to himself or others, nor in need of psychiatric hospital treatment due to mental illness." (Pl. Am. Compl. ¶¶ 25, 27). Thus, he is asking the Court to accept the tenuous theory that, although he was completely functional and mentally stable during his time in the Hospital, he became immediately unable to function in society upon his release, and then quickly recovered. (Am. Compl. ¶¶ 27–29; Pl. Opp. Mem. at 8 (conceding that plaintiff's alleged inability to function in society was "for a short period of time")). *See, e.g., Lindsay v. Rizzo,* No. 94 Civ. 1199, 1996 WL 204338, at *1, 1996 U.S. Dist. LEXIS 5622, at **1–2 (N.D.N.Y Apr. 9, 1996) (rejecting plaintiff's claim for a toll when he alleged post-traumatic stress and explicitly disclaimed a condition of insanity).

Moreover, although there is no statutory requirement that the inability to function persist for a specified period of time, I find plaintiff's suggestion that a statute could be tolled based on a claim of a one-day (or thereabouts) inability to function to be at odds with the spirit of the statute and this Circuit's application of it. Indeed, courts in this Circuit have strictly applied *McCarthy*'s determinations that "the legislative history of CPLR 208 indicates that the Legislature intended the toll for insanity to be narrowly interpreted" and that "the tolling provisions should not readily be given an expansive interpretation tending to undermine the basic purposes behind the Statutes of Limitation." 55 N.Y.2d at 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072. Plaintiff's assertions, however, require an expansive reading of the statute. Indeed, by its nature, an over-all inability to function requires a condition that consumes a person in a substantial way not just for one day but for a significant period of time.

Finally, plaintiff's theory of a one-day toll seems all too convenient and appears to be an abuse of the toll. Plaintiff clearly knew he was supposed to file his complaint by May 27, 2008, as he tried to do so but missed the deadline by four minutes. At the time of filing, plaintiff obviously knew he was subject to the statute of limitations, and he should have been able to file the complaint four minutes earlier than he did. His failure to do so had nothing to do with his mental condition three years earlier. This, combined with plaintiff's failure to allege any facts relating to an inability to function, and the implausible nature of a sudden inability to function while out of the Hospital after being mentally stable within the Hospital, lead me to conclude that plaintiff is not entitled to the toll. Thus, plaintiff's claims are untimely and are, accordingly, dismissed.

### C. *State Law Claims*

"The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). With the dismissal of plaintiff's federal § 1983 claims, there remains no independent jurisdictional basis for the state law claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Lynch v. Suffolk County Police Dep't, Inc.,* 348 Fed.

Appx. 672, 676 (2d Cir.2009). Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them as well.

### CONCLUSION

For the foregoing reasons and to the extent set forth above, defendants' motions are granted and the plaintiff's amended complaint is dismissed. The Clerk of the Court shall enter judgment accordingly, dismissing the amended complaint, with costs.

SO ORDERED.