## W. P. DUNCAN v. P. W. VICK.

[Abstract Kentucky Law Reporter, Vol. 7—756.]

**Statute of Limitations.**

> If a person is of unsound mind when a cause of action accrues to him, the limitation does not begin to run until three years after his restoration to his proper mind, and when a person has been once found to be of unsound mind, the law presumes that this condition continues.

**Restoration of Lunatic to Reason.**

> Where one is of unsound mind when a cause of action accrues to him but thereafter is restored to his reason and remains sane for a long period of time, knowing that he has a cause of action, if he takes no steps to recover his rights, and thereafter again becomes insane, the statute of limitations will run against him.

### APPEAL FROM LOGAN CIRCUIT COURT.

April 22, 1886.

OPINION BY JUDGE HOLT:

By the death of W. P. Duncan in January, 1856, his son, W. P. Duncan, became the owner of about four hundred ninety-four acres of land. His brother-in-law, Robert Tucker, sold and conveyed it to Eben & J. C. Vick and John Mills on February 3, 1858, claiming that he had the power to do so by virtue of a power of attorney executed to him by W. P. Duncan on May 2, 1856. The vendees took immediate possession of the land, and either they or those claiming through them have held ever since the purchase from Tucker. It is manifest that the power of attorney did not authorize Tucker to sell it; but only to act for W. P. Duncan in the settlement of his father's estate, and to execute all papers necessary to such end, and the division of the property.

The appellee, P. W. Vick, who is a subsequent purchaser of the land, and claims through the grantees in the Tucker deed, is not therefore protected by the power of attorney. He, however, as an additional defense to this suit, which was brought by the committee of W. P. Duncan, he being a lunatic, on June 18, 1883, relied upon an alleged adverse possession of the land since the sale by Tucker and the statute of limitation. To avoid this it is claimed

that W. P. Duncan was at the time of the sale and has been ever since of unsound mind. The testimony shows that he had typhoid fever in 1852, resulting in mental trouble to such an extent that he was sent to an asylum in 1853, where he remained for about a year. In 1854 he went to the home of his brother-in-law, Robert Tucker, in Arkansas. After his father's death and in the summer of 1856 he visited his old home in this state, and again did so in the fall of 1859, remaining the last time for several months. He returned permanently to Kentucky in 1865, and in 1872 or 1873 was again confined in an asylum, where he has ever since remained save for about a year.

By our statute if a person is of unsound mind when a cause of action accrues to him, the limitation does not begin to run until three years after his restoration to his proper mind. When a person has been once found to be of unsound mind the law presumes that this condition continues. The prima facie condition thereafter presumed to exist must be rebutted by one who claims a right through a person previously found to be of unsound mind. It is also consistent with both law and reason that the limitation should not begin to run against one so afflicted unless it appears that his mental restoration or lucid interval lasts sufficiently long for him to look into his rights in the matter and take steps toward their assertion.

There is no question but what the lapse of time bars the appellant's claim unless it be saved by the unsound mind of the character just indicated. Over a quarter of a century has elapsed since the sale by Tucker; and courts properly hesitate to disturb titles upon which innocent parties have long reposed. The land in contest was unimproved when sold by the appellant's brother-in-law. The subsequent owners have spent their labor and means upon it until now its condition is greatly changed. The evidence tends strongly to show that when W. P. Duncan was in Kentucky in 1859 he knew that the land had been sold by Tucker, or at least that it was then held and claimed by others. It is true that there is some testimony that during that visit he was at times mentally affected; but upon the other hand it appears that he was at times in his proper mind, and sufficiently long for him to have known that his right to the land was in peril and to have asserted his right to it by suit. He purchased a slave and some stock which he took

with him upon his return to Arkansas; and the testimony taken in the latter state shows that while he lived there his neighbors and friends did not regard him as of unsound mind.

Moreover there is no testimony showing that he received the money derived from the sale of the land by Tucker. The widow of the latter, who is the sister of the appellant, testifies that her husband paid him $1,000, and she proves what he did with it; she also says that the remainder of the purchase-money was paid directly to her brother by the purchasers. The fact that the appellee alleges in his answer that it was all paid to Tucker should not affect him or this evidence because he was not the immediate purchaser and can not therefore be held to know to whom it was paid. So far as the evidence shows he traveled to and fro between this state and Arkansas unattended. He bought land in the latter state, and the receipt of the purchase-money of that, in contest together with the fact that when in Kentucky in 1859 he was in the immediate vicinity of the land and knew it was then held by others, tend strongly to show such a recognition and ratification of the sale by Tucker as to preclude any disturbance of the present holder of the land. But whether this be so or not we think the evidence shows that after the sale he was, when in his proper mind, aware that others were in possesison of his land claiming it as their own, and that this mental condition lasted sufficiently long to have enabled him to assert his right to the land by suit. The lower court so thought as to this question of fact, and in the light of all the evidence we do not feel authorized to disturb its conclusion.

Judgment *affirmed.*

*Browder & Edwards, Edward W. Hines, for appellant.*

*Jno. S. Rhea, for appellee.*