John Carroll Young, J.
This is a claim for damages for illegal commitment, confinement and imprisonment of the claimant; the claim was filed July 10,1964.
Upon the trial, the claimant established that he was born on May 12,1925 and that on May 12,1943 by a purported judgment of conviction of burglary in the second degree based upon his plea of guilty in Tompkins County Court, the claimant was confined in Elmira Reformatory at Elmira, New York. He was placed on parole from that institution on November 3, 1944, but *1033 a month later on December 3, 1944 he was declared delinquent. However, it was not until December 24, 1944 that the claimant was again taken into custody. At that time, he was arrested upon a new and unrelated charge, as a result of which he was convicted of burglary in the second degree and burglary in the third degree.
On March 14, 1945, he was sentenced to Attica State Prison as a second offender and was received in that institution on March 16, 1945 under sentences of 20 to 30 years and 10 to 20 years to run concurrently.
Subsequently, as a result of an application made by the claimant, an order of the County Court of Tompkins County was entered in the office of the Clerk of that county on August 31, 1954, vacating, setting aside and declaring to be null and void the purported arraignment and plea of guilty by the claimant, and the purported judgment of conviction and sentence of the claimant to Elmira Reformatory on May 12, 1943 and likewise vacating and setting aside and declaring null and void all proceedings subsequent to the order of the Supreme Court transferring the indictment to said County Court for disposition, all on the grounds that said judgment of conviction was rendered without jurisdiction at a term of court other than a stated term or an adjourned stated term. Thereafter, on February 2, 1955 on said unrelated charge, the claimant was resentenced to Attica State Prison as a first offender to terms of 7% to 15 years and 2y2 to 5 years for the convictions of March, 1945, the same to run consecutively.
On November 25, 1959 the claimant was paroled from Attica State Prison, but on July 19,1960 he was returned to Attica for a violation of his parole. He was later transferred to Auburn State Prison from which he was again placed on parole on November 14, 1963 and later was once more apprehended for parole violation in September of 1964. On November 23, 1964 he was returned to Attica where he remained until released upon the maximum discharge date of his sentence in January of 1965.
It is claimant’s contention that since his initial conviction and confinement in Elmira Reformatory were declared null and void by the order of the Tompkins County Court, he was illegally detained at Elmira Reformatory and that he is entitled to damages for this period of allegedly wrongful detention.
At the close of the claimant’s case, motions were made by the State to dismiss the claim upon the grounds that it was not timely filed and that the claimant had failed to prove that his confinement to Elmira Reformatory was made without a valid commitment or with a commitment which was invalid on its face. *1034 Decision was reserved upon these motions and the State thereupon rested and renewed the motions referred to above.
Counsel for the State and counsel for the claimant both stated in open court that the two-year period of limitation for filing a claim prescribed by subdivision 5 of section 10 of the Court of Claims Act, commenced to run on November 25, 1959. On that date, as noted above, the claimant was paroled from Attica State Prison where he was serving a sentence for a subsequent, unrelated charge. He had attained his majority on May 12,1946, so that on said date his only disability existing to toll the statutory period was that of imprisonment, subject to the provisions of former section 510 of the Penal Law, now section 79 of the Civil Eights Law.
Since the subject matter of his claim concerns the events of his prior detention and did not involve his then current imprisonment on a subsequent and unrelated charge, the claimant upon his release on parole on November 25,1959 qualified as a parolee from a State prison and came within the exception of subdivision b of section 510 of the Penal Law. At that time, he had the capacity to institute an action or to bring a claim with respect to matters arising out of his prior detention.
The issue thus presented concerning whether the claimant has timely filed his claim resolves itself into a question of whether or not the two-year statutory period continued to run uninterruptedly from November 25, 1959, or whether the claimant’s reincarceration for parole violation on July 19, 1960 caused the period of limitation to be tolled during such subsequent detention.
As early as 1743 the courts of England, under a statute providing for the tolling of a Statute of Limitations while the plaintiff was “ beyond the seas ”, held that if one being beyond the seas returned, the statute would run without suspension even though the plaintiff again went beyond the seas.
The Lord Chancellor, in the case of Sturt v. Mellish ([1743] 2 Atk. 610, 614; 26 Eng. Rep. 765) said that “ by being in the kingdom after the cause of action had accrued, and not bringing any, though he went out of the kingdom again, his privilege is gone, as much as if he had been in the kingdom the whole six years.”
In this country from an early date, courts of other States have held similarly where, for example, a lucid interval of one insane having started the statute running, the running of the statute was found not to be suspended by the party again becoming insane. (Clark v. Trail, 1 Met. [58 Ky.] 35; Duncan v. Vick, 13 Ky. Op. 1074; Ann. 53 A. L. R. 1327.) This is partic *1035 ularly true where the period between successive disabilities has been of sufficient duration to afford a party a reasonable opportunity to take action in furtherance of his rights.
In the instant claim, claimant was on parole for almost eight months following his release on November 25,1959 and the court finds that this period was of sufficient duration to afford the claimant a reasonable opportunity to inquire into his rights and take necessary steps to protect them. Statutes of Limitation are statutes of repose and where, as here in the Court of Claims, the statute provides the basis for the jurisdiction of the court to entertain the claim, it must be clearly established that the claimant has complied therewith.
We hold that the two-year period prescribed by subdivision 5 of section 10 of the Court of Claims Act, once having begun to run, continued to run notwithstanding the claimant’s reincarceration for violation of parole.
‘ ‘ Disabilities, in order to bring a party within the exception of the Statute of Limitations, may not be piled one on another, i. e., once the statute has commenced to run it will continue notwithstanding any subsequent disability, so that where a disability existing at the time of the accrual of the cause of action is removed the statute will then run and will not be suspended by any subsequent intervening disability (54 C. J. S., Limitations of Actions, § 219).” (Gershinsky v. State of New York, 6 AD 2d 964, 966, affd. 6 N Y 2d 798.)
Since the instant claim was filed July 10, 1964, over four and one-half years after the claimant’s release on parole on November 25,1959, the claim is not timely filed.
Moreover, even if we were to hold that the claim herein was timely filed, there is an additional factor in the case which must result in dismissal of the claim.
It is urged on behalf of claimant that the burden of establishing that the claimant was incarcerated in Elmira Reformatory under a valid commitment is on the State, and, since the State failed to produce any proof in this regard, that the illegality of claimant’s confinement in Elmira Reformatory is thereby established; further, claimant asserts that it is impossible for the claimant to prove the existence or nonexistence of a commitment.
At the outset, it is noted that paragraph “ 5 ” of the claimant’s claim alleges in the alternative that the claimant’s imprisonment either was imposed without the issuance of an order of commitment or was imposed pursuant to an order of commitment which was invalid and void on its face.
*1036 The court should not be required to speculate concerning which of the alternative grounds stated in his claim, claimant has elected to pursue.
The claimant had available to him the discovery and disclosure devices of the CPLR and particularly of CPLR 4521 as a means of proving either the existence of an invalid commitment or the nonexistence of a commitment. (Di Santo v. State of New York, 41 Misc 2d 601, affd. 22 A D 2d 289.)
Claimant has failed to produce any evidence of the nonexistence of a valid order of commitment or of the invalidity of any commitment under which the claimant was incarcerated.
There is a general presumption that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done. (Richardson, Evidence [9th ed.], § 71.) This presumption compels the adversary to come forward with affirmative evidence of unlawful or irregular conduct. (Richardson, Evidence, supra.)
It seems clear that the County Court had jurisdiction of this claimant and of the cause by virtue of the order of the Supreme Court for the County of Tompkins which transferred the indictment to the County Court for disposition. As stated in Harty v. State of New York (29 A D 2d 243, 244): “ However, this court has previously held that where the illegal imprisonment is pursuant to legal process which is valid on its face, the State cannot be held liable in damages for wrongful detention. (Nastasi v. State of New York, 275 App. Div. 524, 526, affd. 300 N. Y. 473.) An exception to the rule that the State need not respond in damages where the commitment is valid on its face appears to be where the court issuing a process lacked jurisdiction of the person or the subject matter. (Troutman v. State of New York, 273 App. Div. 619, 621; Hicks v. State of New York, 22 AD 2d 837, 838.) ”
In the instant case the County Court acquired jurisdiction by the order of the Supreme Court transferring the indictment to the County Court for disposition. (See Code Crim. Pro., § 39, subd 2.) The County Court is a court of competent jurisdiction, and there is a presumption that all the proceedings before the court were regular. (People ex rel. Albanese v. Hunt, 266 App. Div. 105, affd. 292 N. Y. 528.)
By the order of removal of the indictment by the Supreme Court to the County Court, the County Court acquired jurisdiction to try and determine the indictment. That jurisdiction is complete. (People ex rel. Hirschberg v. Supreme Court, 269 N. Y. 392, 395.)
*1037 It is significant that the order vacating the claimant’s judgment of conviction was limited to those proceedings subsequent to the order of the Supreme Court transferring the indictment to County Court for disposition. It appears that the claimant was arrested on April 10, 1943 on a charge of burglary in the second degree, which charge led to his purported conviction and sentence to Elmira Reformatory, forming the basis of this claim.
Thus, at the time the order of the Supreme Court transferring the indictment was made, the claimant was in custody and the said order clothed the County Court with continuing jurisdiction both of the cause and of the person of the claimant. (Troutman v. State of New York, 273 App. Div. 619; Fishbein v. State of New York, 282 App. Div. 600.)
There is no proof in the record that when the claimant was taken to Elmira Reformatory, that the necessary commitment papers were lacking, or were not valid on their face. The confining authorities were under a duty to comply with the order of the Tompkins County Court and were not obliged to institute an inquiry in order to satisfy themselves that no error had been committed. They were confronted .with what is presumed to have been a valid directive-for the incarceration of the claimant, and in obeying it they did not subject themselves or the State to an action for false arrest and imprisonment. (Nastasi v. State of New York, 275 App. Div. 524, 526, affd. 300 N. Y. 473.)
Summarizing, the defendant has the benefit of the presumption that the claimant was incarcerated in Elmira Reformatory under a commitment which was valid. The claimant has failed to produce any evidence to rebut this presumption. At the outset of the chain of events herein, the Tompkins County Court had jurisdiction of the claimant and of the cause, and it is well settled that imprisonment which is authorized by process which is regular on its face and is issued by a court having acquired jurisdiction, is lawful and cannot give rise to a cause of action for false imprisonment. This is true even though the imprisonment may be later declared illegal or erroneous. (Nastasi v. State of New York, supra.)
The claimant has failed to sustain his burden of proof as to this essential portion of his claim.
For the reasons stated, the motions made on behalf of the defendant State of New York, upon which decision was reserved at the trial, to dismiss the claim upon the grounds that it was not timely filed and upon the grounds that the imprisonment of the claimant was not proved to be invalid, are now granted. The claim is dismissed.