**John KOSTA, Plaintiff,**

v.

**ST. GEORGE'S UNIVERSITY SCHOOL OF MEDICINE and Charles R. Modica, Defendants.**

**No. CV 84–4823.**

United States District Court, E.D. New York.

Aug. 12, 1986.

---

Math & Saperstein by Martin I. Saperstein, Mineola, N.Y., for plaintiff.

Patrick F. Adams, Bay Shore, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

John Kosta commenced this diversity suit against the St. George's University School of Medicine ("St. George's" or the "Medical School"), and Charles R. Modica, St. George's Chancellor and the Chairman of its Board of Trustees, for acts in violation of New York's common law concerning non-academic suspensions. Kosta seeks compensatory and punitive damages, attorneys fees, and reinstatement as a student at St. George's. Modica and St. George's have moved jointly to dismiss the Complaint for lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim. Rule 12(b)(2), (5), (6), Fed.R.Civ.P.

## BACKGROUND

Kosta, a resident of New Jersey, alleges that in early 1984, as a second year medical student at St. George's, (which was then conducting classes in Barbados, West Indies), he informed a St. George's dean that he had observed a number of other students cheating on tests. These charges were rejected by the Medical School, but the complaint alleges that the students conspired to harass Kosta and disrupt his life in retaliation for the accusation. Kosta complained to the Medical School, but no action was taken. Shortly thereafter, in February, 1984, at the suggestion of St. George's Dean of Students, Kosta took a leave of absence and returned to New Jer-

sey. Kosta subsequently met defendant Charles Modica at the offices of the Foreign Medical School Services Corporation in Bay Shore, New York, when Modica was visiting the United States on business and apparently, they discussed the circumstances of Kosta's conduct at St. George's. Modica subsequently informed Kosta that a hearing would be held in Barbados to inquire into the behavior of Kosta and the other students. Kosta did not appear at the hearing and did not present any evidence or witnesses on his behalf, despite having been notified of an opportunity to do so.

Kosta alleges that after he first learned of the hearing, he requested that it be adjourned until after the spring semester and moved to Bay Shore, New York, and that these requests were granted. Kosta also alleges, however, that on April 2, Modica's office called him at home in New Jersey to inform him that the hearing would be held in Barbados four days hence, on April 6. Kosta claims that he reminded the caller of his earlier understanding and again requested a continuance and a change of venue to Bay Shore but that these requests were denied. Kosta admits that he did not attend the hearing.

Approximately two months later, Kosta received a letter from Modica placing Kosta on a "Medical Leave of Absence." Under its terms, Kosta would be able to rematriculate at St. George's only if he sought psychiatric help and was approved by a panel of three psychiatrists. Kosta twice wrote Modica to request a reconsideration or appeal of the decision, but there was no reply. Kosta travelled to Barbados later that year in an attempt to register for the fall, 1984 term, but the Medical School would not allow Kosta to do so. Kosta obtained counsel and this lawsuit ensued.

### IN PERSONAM JURISDICTION

Defendants contend that the Complaint should be dismissed because they are not subject to personal jurisdiction in New York. The following facts are relevant to the jurisdictional issue.

### A. St. George's

St. George's was established in 1976 in the West Indies largely through the energies of R. Modica, an attorney. The Medical School is an entity organized under the laws of Grenada and its stock, which is controlled by four shareholders, has been placed into an educational trust controlled by nine trustees. For a period in the fall of 1983, events compelled St. George's to cease operations in Grenada and evacuate its students to other locations. During that time, St. George's conducted classes on the campus of Long Island University ("LIU") in Brooklyn, New York, and arranged with LIU to house students in LIU's dormitories. None of events giving rise to the instant suit occurred at the LIU campus. St. George's has twice applied to the New York State Commissioner of Education to obtain clinical clerkships in New York. According to its own newsletter, St. George's attracts 508 students from the United States, with the majority coming from New York. St. George's solicits students with advertisements in the Sunday edition of the New York *Times*.

Kosta contends that St. George's is subject to jurisdiction in New York because of the relationship between St. George's and the Foreign Medical School Services Corporation (FMSSC), a New York corporation with offices in Bay Shore, Long Island. FMSSC, a profit-making corporation, is owned wholly by a Nevada corporation, the Institute for Medical Education. Two of the Nevada corporations's shareholders, including Modica, are also shareholders or trustees of St. George's. Modica is an officer of FMSSC and St. George's Chancellor and Chairman of the Board of Trustees. Under a contract with St. George's, FMSSC provides a number of services for St. George's and FMSSC retains between thirty-four and forty-two employees at its Bay Shore, Long Island office for that purpose.

It is clear, however, that FMSSC is more than a mail drop or telex center for St. George's. St. George's letterhead identifies FMSSC as its sole North American

correspondent and FMSSC's letterhead identifies it as the North American correspondent for St. George's. All student financial affairs, including statements and tuition payments, are handled through the FMSSC. Checks payable to St. George's are endorsed over to FMSSC for deposit in FMSSC's New York bank and ultimate transfer to St. George's account in a Canadian bank. Students seeking admission to St. George's are often directed to appear at FMSSC's Bay Shore office for interviews. St. George's admissions director and assistant director both maintain offices in Bay Shore at FMSSC. Nearly all of St. George's administrative matters are handled by FMSSC in Bay Shore. Apparently, the only non-academic or non-educational affairs performed by St. George's are those directly related to the functioning of school facilities in the West Indies. Furthermore, it does not appear that FMSSC provides services to any other organization or medical school except St. George's. In addition, St. George's personnel, including Modica, often visit FMSSC's offices and conduct business there.

■ Initially, the Court decides that the exercise of jurisdiction over St. George's will not violate the Due Process Clause of the Constitution. *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *But cf. Worldwide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Moreover, as a New York corporation, FMSSC is subject to jurisdiction in New York. N.Y.Civ.Prac.L. § 301. The issue then becomes whether St. George's, admittedly a foreign, non-resident corporation, is doing business in New York, and subjection under New York law, by virtue of either its own activities or its relationship with the FMSSC.

Under the facts in this case, it is clear that FMSSC, through its contract with St. George's, is an agent for St. George's in New York. FMSSC handles nearly every element of St. George's administrative affairs with respect to the North American students, which comprise approximately seventy percent of St. George's student body. These affairs include admissions, student financial affairs, and recordkeeping. FMSSC's Bay Shore office also serves as a base of operations for visiting St. George's staff. Most significant perhaps is that Modica is an owner and officer of both entities. New York courts have held that an important element in establishing jurisdiction is the degree of common ownership between the New York and the foreign corporation. *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 29, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965); *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917).

St. George's is also subject to jurisdiction under § 301 for its own acts, without reference to its relationship to FMSSC. Specifically, St. George's arrangement with LIU for teaching and dormitory facilities in late 1983 indicates that St. George's was "doing business" in New York. In addition, St. George's officers and admissions staff use office space in New York. *Bryant v. Finnish National Airlines*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). Therefore, the Court concludes that St. George's is present in New York as a non-resident corporation under § 301 on two independent bases.

### B. Modica

The exercise of jurisdiction over Modica is far more problematic. Modica, an attorney who once practiced in Bay Shore, is an owner and officer of FMSSC, and an owner, Chairman of the Board, Chancellor, and founder of St. George's. In an affidavit, Modica states that he resides in Florida and, in support of his sworn statement, has produced copies of his automobile and pilot's license as well as his last eight federal income tax returns. Plaintiff suggests

that Modica visits New York frequently in connection with his business affairs here as an officer of FMSSC, maintains a house here for use during the visits, and has sent mail to Kosta from New York. It is undisputed that Modica met Kosta at the Bay Shore office to discuss the conduct of Kosta and the other St. George's students. It is also undisputed that Modica was present in New York on a number of occasions and was "stranded" in New York when St. George's was forced to evacuate its Grenada campus in 1983. Nonetheless, the evidence does not establish either the frequency or duration of Modica's visits to New York. Furthermore, Kosta's proof that Modica resides in or owns a house in New York consists soley of the page from the telephone book. Close examination shows that the address and telephone number referred to are for a Charles A. Modica. The defendant in this case is Charles R. Modica.

■ On the basis of these facts, the Court decides that it is not offensive to the Due Process Clause to subject Modica to the jurisdiction of a New York court. *Burger King*, 471 U.S. 462, 105 S.Ct. 2174; *International Shoe*, 326 U.S. 310, 66 S.Ct. 154. Modica's visits to New York, his position as an owner and officer of a New York corporation, and his discussions with Kosta in Bay Shore about matters relating to this lawsuit evince a connection sufficient to establish "minimum contacts" with New York and, therefore, make a judgment of this Court binding on Modica.

■ Under New York law, however, the test for jurisdiction is more rigorous. It is well-established that a New York domiciliary will be subject to jurisdiction under § 301 for any cause of action arising anywhere. D. Siegel, *Handbook on New York Practice*, § 81 (1978). It is equally well-established that a non-resident who is served in New York is subject to the jurisdiction of New York Courts. *Id.* § 59. On these facts, the Court concludes, somewhat reluctantly, that plaintiff has failed to prove that Modica is a New York domiciliary. Modica's tax returns and driver's and pilot's license point to a Florida domicile.

Modica may visit New York and even conduct interviews, meetings, and press conferences here, but Kosta cannot prove that Modica resides here or maintains a home here. Although it is probable that Modica's contacts with New York are extensive, particularly in light of his position as an officer of FMSSC and a New York lawyer, the facts before the Court are insufficient to prove that Modica is a New York domiciliary, much less a resident. *Dobkin v. Chapman*, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451 (1968). Accordingly, the Court concludes that Modica is subject to the jurisdiction under New York law only to the extent that he has been served here.

## SERVICE OF PROCESS

■ Before considering the facts underlying service of the Summons and Complaint in the instant case, it would be helpful to digress briefly on Rule 4, the federal rule on service of process. As amended in 1983, Rule 4 contemplates two distinct pathways for service: in accordance with state law, Rule (4)(c)(2)(C)(i); or by mail, Rule 4(c)(2)(C)(ii). Service must be in accordance with *all* the requirements of either subsection (i) or (ii). Once service is attempted under subsection (ii), service under state law is not permissible. *Armco, Inc. v. Penrod Stauffer*, 733 F.2d 1087 (4th Cir.1984). Subsection (ii) allows a plaintiff to make service by mail. The Summons and Complaint must be sent together by first-class, pre-paid mail, along with two copies of an acknowledgement form, and a return envelope addressed to the sender, postage pre-paid. If the sender does not receive the acknowledgement form within twenty days of the date of mailing, then plaintiff must make service by a specified follow-up method. If the defendant to be served is an individual, subsection (d)(1) requires that the Summons and Complaint must be either delivered to the defendant or an authorized agent, or left "at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." If the defendant to

be served is a corporation, either foreign or domestic, subsection (d)(3) requires that the Summons and Complaint must be delivered to "an officer, or managing or general agent, or to any other agent authorized by appointment or by law to receive service...." Subsection (d)(3) goes on to say that a copy of the Summons and Complaint must also be mailed to the defendant if the statute authorizing the agent to accept service so requires. In short, Rule 4(c)(2)(C)(ii) allows service by mail but requires some sort of personal delivery if the plaintiff does not receive acknowledgement of service by mail.

Turning then to the facts pertinent to service of process in this case, in December 1984 plaintiff commenced this action by way of an Order to Show Cause. Copies of the necessary papers were mailed to Modica, St. George's, and Patrick Adams, defendants' attorney, all care of FMSSC's offices, and a copy was hand delivered to Adams. The defendants have appeared in this action, conducted discovery, and appeared before the Court on at least two occasions. In response to the instant motion to dismiss, plaintiff attempted to re-serve defendants in February 1986 by mail under Rule 4(c)(2)(C)(ii). Proper service was attempted but plaintiff never received an acknowledgement of receipt and has not attempted to follow-up mail service by personal delivery, either under subsections (d)(1) or (d)(3).

■ Quite clearly, St. George's was sufficiently served in 1984 when a messenger delivered the Summons and Complaint to Adams, who is an officer of St. George's. N.Y.Civ.Prac.L. § 311(1). On the other hand, it appears that Modica has not been served in accordance with Rule 4(c)(2)(C)(ii), despite plaintiff's repeated efforts to effect service. Nonetheless, to quote plaintiff's counsel, to dismiss this action at this juncture would serve no useful purpose because of the advanced status of this action and the lack of prejudice to defendants. Therefore, plaintiff must re-serve Modica in accordance with Rule 4(d)(1), Fed.R. Civ.P., within sixty (60) days or the Com-

plaint will be dismissed against him. *See Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 740 (2d Cir.1985); *Grammenos v. Lemos,* 457 F.2d 1067, 1071 (2d Cir.1972).

## FAILURE TO STATE A CLAIM

Defendants' argue that the claim in this case should not be governed by the substantive law of New York and, even if New York applies, Kosta has failed to state a claim under New York law. Although defendant makes a persuasive case that New York law does not apply, a proper treatment under interest analysis requires that the Court be apprised of the law of the other jurisdiction, which in this case could be either Barbados, where the acts complained of occurred, or Grenada, where St. George's is incorporated. The Court must therefore defer a decision on defendants' motion to dismiss for failure to state until the parties present the law of Barbados and Grenada. With respect to defendants' second argument, namely, that Kosta fails to state a claim against St. George's and Modica under New York law, the Court concludes that the Complaint states a claim under New York law against both defendants. *Tedeschi v. Wagner College,* 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980). Defendant's motion to dismiss for failure to state a claim is denied at this time.

## ORDER

Defendants' motion to dismiss the Complaint is denied in all respects. Plaintiff shall re-serve Charles R. Modica in accordance with Rule 4(d)(1) within sixty days or the Complaint will be dismissed against defendant Modica for lack of *in personam* jurisdiction.

SO ORDERED.