13-1665-cv
La Russo v. St. George's University School of Medicine

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2013

Heard: November 5, 2013          Decided: March 4, 2014

Docket No. 13-1665-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
MARIA LA RUSSO, as attorney in fact for
A. Matthew De Lucia,
    Plaintiff-Appellant,

            v.

ST. GEORGE'S UNIVERSITY SCHOOL OF MEDICINE,
JOHN DOES, 1-5, (as employees, agents, and/or
servants of St. George's and/or as independent
contractors), JANE DOES, 1-5, (as employees,
agents, and/or servants of St. George's and/or
as independent contractors),
    Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, HALL, and LIVINGSTON, Circuit Judges.

    Appeal from the March 28, 2013, judgment of the United

States District Court for the Southern District of New York

Edgardo Ramos, District Judge), rejecting a challenge to removal

jurisdiction and dismissing as time-barred a complaint alleging

medical malpractice.

    Judgment affirmed.

Joshua S. Moskovitz, Beldock Levine &
Hoffman LLP, New York, NY (Myron
Beldock, Beldock Levine & Hoffman
LLP, New York, NY, on the brief),
for Appellant.

Gerald W. Sawczyn, Proskauer Rose LLP,
New York, NY (Charles S. Sims,
Proskauer Rose LLP, New York, NY, on
the brief), for Appellees.

JON O. NEWMAN, Circuit Judge.

This appeal primarily concerns a narrow issue of federal procedural law and an equally narrow issue of New York procedural law. The federal law issue is whether a real party defendant in interest that owns and operates a non-juridical entity that was improperly sued in state court may remove a diversity case to federal court without filing an appearance in the state court prior to attempting removal. The state law issue is whether New York's rule tolling a limitations period because of a plaintiff's insanity, N.Y. C.P.L.R. § 208 (McKinney 2013), applies to the facts of this case. These issues arise on an appeal by Plaintiff-Appellant Dr. Maria La Russo, as attorney in fact for her son, A. Matthew De Lucia, from the March 28, 2013, judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, District Judge). The judgment, entered after the District Court denied La Russo's challenge to removal,

granted a motion by Defendant-Appellee St. George's University, Ltd. ("SGU Ltd.") to dismiss because La Russo's complaint was time-barred. See La Russo v. St. George's University School of Medicine, 936 F. Supp. 2d 288 (S.D.N.Y. 2013) ("Dist. Ct. Op."). The complaint asserted medical malpractice, breach of contract, and negligence claims based on alleged failures by St. George's University School of Medicine ("SGU Med." or "the School") to appropriately treat De Lucia's mental illness.

We conclude that the case was properly removed and that the complaint was properly dismissed as time-barred. We therefore affirm.

## Background

The following facts are based primarily on La Russo's complaint, which we assume to be true for purposes of this appeal. See, e.g., Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

La Russo's son, De Lucia, was formerly a student at SGU Med. in Grenada. Prior to his attending the School, La Russo and her son attended an information session at which School staff assured attendees "that there would be medical facilities and treatment available for students on the Grenada Campus, including medical evacuation if needed." Complaint ¶ 57. They were also provided

-3-

with a publication entitled "St. George's University School of Medicine; Think Beyond; 2005-2006," which stated:

> University Health Services (UHS) maintains modern clinic facilities with scheduled and walk-in hours from 9:00AM to 4:30PM, Monday through Friday. Additionally, there is daily 24-hour coverage by well-credentialed physicians and physician assistants to provide students with emergency care when the clinic is closed. Medical emergencies in Grenada are referred to Grenada General Hospital or St. Augustine Clinic . . . . University Health Services facilitates with air evacuation, if indicated, on both campuses.

Id. ¶ 58.

In January 2007, De Lucia received a letter of admission from the School. Enclosed with the letter was a handbook from the Office of the Dean of Students that stated, "The Office of the Dean of Students advocates on behalf of students to help you make the best use of the services available both on and off campus. Any student with mental or physical disabilities is provided a wide range of support services." Id. ¶ 59.

De Lucia began attending the School in August 2007. In the spring of 2009, he visited with his faculty advisor, Dr. Jacqueline Stanley. De Lucia arrived at the meeting looking disheveled and dressed in sweat pants despite the hot climate and asked to see the dean regarding academic issues. Stanley told De Lucia he could not see the dean due to his attire and encouraged him instead to go to the beach and take a vacation.

-4-

Stanley did not advise De Lucia to "visit the counseling department, speak with the dean of students, or see any medical or mental health professional who would have been able to counsel him and provide medical treatment and medication as necessary." Id. ¶ 26.

De Lucia went on a sailing trip in May of 2009. Upon his return, he was suffering from mental illness. He wandered aimlessly on and off the school's campus, and was "disoriented" and "sickly." Id. ¶ 28. Other students alerted School officials to De Lucia's condition. In response, School security officers picked up De Lucia in the middle of the night[1] and escorted him to Mount Gay Hospital in Grenada, an institution La Russo claims "had a bad reputation, maintained deplorable and unsafe conditions, and did not administer appropriate care." Id. ¶ 49.

School staff failed to inform De Lucia's parents about his admission to the hospital and failed to provide an "informative response" to his parents' messages. Id. ¶ 34. On May 14, after being notified of De Lucia's admission to the hospital by fellow students, De Lucia's father traveled to the hospital where he found his son "in an outdoor cell lying on a concrete floor without a mattress, naked except for boxer shorts that were

---

[1] The date of this occurrence is not specified in La Russo's complaint.

hanging down." Id. ¶ 36. De Lucia was "incoherent due to overdosing of Haldol and other drugs," id. ¶ 37, and "was experiencing muscle weakness, muscle tremors, dilated eyes, drowsiness, and dry mouth and lips due to his overmedication and a lack of adequate hydration," id. ¶ 38. His body was "covered with insect bites and a noxious odor of urine and feces permeated his person." Id. ¶ 39. De Lucia's parents obtained his release from Mount Gay Hospital on May 16, 2009, and he returned to the United States the following day.

De Lucia returned to the School twice in attempts to complete his medical education. On both occasions, however, he became ill and returned to the United States. Since his return to the United States, De Lucia has required medical treatment to ameliorate conditions that were non-existent prior to his admission to Mount Gay Hospital.

La Russo's lawsuit. La Russo initiated a lawsuit in New York Supreme Court by filing a notice and summons. She alleged that SGU Med. engaged in psychiatric malpractice, breached its contract with De Lucia, and was negligent. La Russo's claims were based on the School's response to De Lucia's mental health difficulties while he was a student at the School. Her psychiatric malpractice claim stems from the School's "fail[ure] to refer [De Lucia] to counseling or other medical treatment and, though aware of his condition, [its] fail[ure] to intervene and

-6-

provide [De Lucia] with proper psychiatric and medical treatment." Id. ¶ 72.

La Russo also alleges a breach of contract claim. She alleges that a contract was formed between the School and De Lucia "when [the School] offered a variety of educational and related services to [De Lucia] and [De Lucia] agreed to, and did, pay tuition in exchange for those services." Id. ¶ 77. Further, she alleges that the School "breached the contract when, instead of providing medical treatment by well-credentialed physicians and physician assistants at [the School's] facilities, appropriate emergency care, or emergency evacuation, [the School] failed to provide proper medical treatment . . . ." Id. ¶ 79.

Finally, La Russo alleges that the Defendants owed both herself and De Lucia a duty to exercise "reasonable care and diligence in safeguarding Mr. De Lucia, and ensuring that no unnecessary harm befell him." Id. ¶ 84. She alleges that the School's employees and/or agents, including Stanley, "negligently failed to use due care" handling De Lucia's mental illness. Id. ¶ 85. She also alleges that the School breached its duty to properly train its employees to "recognize and properly address a student's need for psychological services and/or a student's psychological crisis." Id. ¶ 86.

La Russo's lawsuit was filed on November 15, 2011. The notice and summons named "St. George's University School of

Medicine" as the sole defendant and was amended to add ten "Doe" defendants. La Russo served a copy of the summons and notice on the New York Secretary of State, mailed a copy by certified mail to SGU Med. in Grenada, and also served the summons and notice on St. George's University, LLC, but not SGU Ltd.

On March 7, 2012, La Russo sought an Order to Show Cause seeking permission to file a supplemental summons adding SGU Ltd., SGU LLC, USS LLC, and Stanley as defendants, and seeking a ruling that the claims against the additional defendants related back to the time the initial summons was filed. The Order to Show cause was issued on March 12, 2012. On April 19, 2012, one day before the Order to Show Cause was returnable, SGU Ltd., asserting that it was the entity that owns and operates the non-juridical named defendant in the caption, filed a notice of removal to the District Court.

La Russo moved to dismiss for lack of subject matter jurisdiction, arguing that because SGU Ltd. had never formally intervened in the action or been joined as a defendant, removal was improper. The District Court denied the motion to dismiss and granted the Defendants' motion to dismiss under Rule 12(b)(6) because the medical malpractice claim was time-barred and the contract and negligence claims were duplicative of the malpractice claim.

Discussion

I.  Removal

La Russo first contends that SGU Ltd. had no authority to remove this case to the District Court.  She argues that if SGU Ltd. believed that SGU Med. lacked capacity to be sued, it should have moved to dismiss the case in state court.  La Russo further contends that under New York General Associations Law § 13, she may sue SGU Med. as an unincorporated association.  SGU Ltd. replies that "where, as here, a legally non-existent entity is named as a defendant, the only logical 'defendant' vested with authority to remove is the real defendant in interest, which here is SGU Ltd."

Initially we note that La Russo's attempt to sue SGU Med. was ineffective.  Rule 17(b) of the Federal Rules of Civil Procedure provides, with an exception not relevant to this case,[2] that state law governs whether a party has the capacity to be sued.  Fed. R. Civ. P. 17(b) ("Capacity to sue or be sued is determined as follows: . . . (3) for all other parties [other than an individual or corporation], by the law of the state where the court is located . . . .").  Under New York law, an action

_____

[2] The exception permits an unincorporated association that lacks capacity to sue or be sued under state law to sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws. See Fed. R. Civ. P. 17(b)(3)(A).

-9-

against an unincorporated association can be brought only "against the president or treasurer." N.Y. Gen. Ass'ns Law § 13 (McKinney 2013). See, e.g., Fairfield Lease Corp. v. Empire Employees Sunshine Club, 345 N.Y.S.2d 305, 329 (N.Y. Dist. Ct. 1973) ("The fatal defect in the plaintiff's contention is that this action, if it is to be maintained, must be against the president of the association."); League of Mutual Taxi Owners v. United Const. Workers, Local 35, 90 N.Y.S.2d 288, 288-89 (N.Y. Sup. 1949) ("[Defendant] is described in the complaint as an unincorporated association . . . . As such, it is not considered a legal entity, but section 13 of the General Associations Law provides for the maintenance of actions against the president or treasurer of the association . . . ."). La Russo did not sue either the president or the treasurer of SGU Med. SGU Med. itself was not an entity with capacity to be sued under state law.[3]

---

[3] La Russo contends that the District Court in Kosta v. St. George's University School of Medicine, 641 F. Supp. 606 (E.D.N.Y. 1986), ruled that SGU Med. was an entity with capacity to be sued. However, the St. George's entity that was a defendant in Kosta was not the unincorporated association that La Russo claimed was the defendant in this litigation. It was "an entity organized under the laws of Grenada[,] and its stock, which is controlled by four shareholders, has been placed into an educational trust controlled by nine trustees." Id. at 608. SGU Ltd. represents, without contradiction, that this entity was St. George's University School of Medicine Ltd., which was the predecessor of SGU Ltd. Br. for SGU Ltd. at 30.

We next turn to the issue whether SGU Ltd. was entitled to remove the case to the District Court. SGU Ltd. asserts it was entitled to remove because, as the owner and operator of the non-juridical entity that La Russo attempted to sue, it is the "real defendant in interest." Br. for SGU Ltd. at 17. Although the quoted phrase appears to describe accurately the status of SGU Ltd. in this litigation, we pause to consider it because it does not appear in the Federal Rules of Civil Procedure, including Rule 17, or in the removal statute, 28 U.S.C. § 1441.

Rule 17(a), captioned, "Real Party in Interest," provides: "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In terms, the rule appears to apply to the party initiating an action, not a defendant resisting a claim. That is the view of a leading treatise. "By its very nature, Rule 17(a) applies only to those who are asserting a claim and thus is of most importance with regard to plaintiffs," 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1543 (4th ed. 2007), and flatly declares, "Rule 17(a) is limited to plaintiffs," id. § 1542.

The phrase "real party defendant in interest" appears to have entered federal jurisprudence in 1886 in the syllabus to an

opinion ruling that the wife of an executor was the real party defendant in interest whose assets would be diminished by the lawsuit. <u>See</u> <u>Witters v. Sowles</u>, 28 F. 121 (C.C. Vt. 1886). The phrase has been used mostly by district courts, occasionally by courts of appeals, and once by the Supreme Court, <u>see</u> <u>Lumbermen's Mutual Casualty Co. v. Elbert</u>, 348 U.S. 48, 51 (1954).

The first decision to use the phrase in the context of a challenged removal is the opinion of District Judge Charles S. Haight, Jr. in <u>M.E. Aslett Corp. v. Crosfield Electronics, Inc.</u>, No. 86 CIV. 3549, 1987 WL 7023 (S.D.N.Y. Feb. 17, 1987). Crosfield Electronics (U.S.A.) Ltd. removed to the district court a case filed in a state court against an entity identified as "Crosfield Electronics, Inc." The plaintiff sought a remand to the state court on the ground that removal could be achieved only by the party named as a defendant in the complaint, <u>i.e.</u>, Crosfield Electronics, Inc. Affidavits established that "Crosfield Electronics, Inc." was a trade name of Crosfield Electronics (U.S.A.) Ltd. and had no legal existence or the capacity to be sued.

Acknowledging that 28 U.S.C. § 1441(a) permits "the defendant" to remove a case over which a district court has

jurisdiction, Judge Haight declined to read "the defendant" as the entity named as a defendant in the complaint, and instead read the phrase to mean "the real party defendant in interest." M.E. Aslett, 1987 WL 7023, at *2. As he explained, "Removal cannot be denied to this defendant merely because plaintiff improperly sued its fictitious trade name." Id. Removal by the real party defendant in interest was subsequently approved by other district courts. See Hillberry v. Wal-Mart Stores East, L.P., No. Civ.A.3:05CV-63-H, 2005 WL 1862087 (W.D. Ky. Aug. 3, 2005) (named defendant was non-existent entity); Pioneer Exploration, Ltd. v. Kansas Gas Service Co., No. 04-1335, 2004 WL 2931403 (D. Kan. Dec. 17, 2004) (named defendant existed only to license trade name).

The real party defendant in interest is not only entitled to remove, but, if it seeks removal, it must act promptly because the 30-day interval in which it is permitted to do so, see 28 U.S.C. § 1446(b) (2013), begins when it is "on notice that the wrong company defendant has been named." Hillberry, 2005 WL 1862087, at *1; see Ware v. Wyndham Worldwide Inc., Civ. No. 09-6420, 2010 WL 2545168, at *2 (D. N.J. June 18, 2010) (30-day interval started when real defendant accepted service of

complaint, although complaint named non-existent entity).

The unstated premise of all of these decisions, with which we fully agree, is that the concept of a "real party defendant in interest" is not only entirely valid, it is an important aspect of removal jurisprudence, despite the absence of the phrase from Rule 17 or elsewhere in the Federal Rules of Civil Procedure.

We next consider La Russo's contention that even if SGU Ltd. was entitled to remove, it failed to do so properly because it had not entered an appearance in the state court. La Russo makes this claim obliquely by pointing out that in all of the removal cases discussed above, the removing defendant had filed an appearance in the state court. The argument lacks merit. Nothing in sections 1441 or 1446 requires a removing defendant to have appeared in the state court proceeding prior to removal. Nor is there merit in La Russo's claim that removal was improper because SGU Ltd. was not served. Service of process upon a removing defendant is not a prerequisite to removal. See <u>Delgado v. Shell Oil Co.</u>, 231 F.3d 165, 177 (5th Cir. 2000); <u>City of Ann Arbor Employees' Retirement System v. Gecht</u>, No. C-06-7453, 2007 WL 760568, at *9 (N.D. Cal. Mar. 9, 2007).

Next, we consider La Russo's claim that, even if SGU Ltd. properly removed, the District Court lacked diversity jurisdiction. Contrary to her claim, diversity jurisdiction was not destroyed by the listing of SGU Med., alleged to be a New York resident, as a named defendant. As a non-juridical entity that cannot be sued, its being named as a purported defendant does not destroy diversity jurisdiction. Furthermore, "[e]ven if a named defendant is [a non-diverse] citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant." Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001). Nor is there merit in La Russo's claim that diversity jurisdiction is lacking because SGU Ltd. is owned by St. George's University, LLC, a Delaware corporation that Plaintiff alleged has a "business presence" in New York. Diversity jurisdiction depends on the citizenship of a corporate defendant with capacity to be sued, see 28 U.S.C. § 1332(c)(1), not the citizenship of the corporate defendant's corporate owner.

II. Timeliness and the Insanity Toll

The District Court concluded that La Russo's claim was time-barred because the two and one-half year limitations period for the medical malpractice claim, see N.Y. C.P.L.R. § 214-a (McKinney 2013), expired on November 14, 2011, one day before the summons was filed. See Dist. Ct. Op., 936 F. Supp. 2d at 299. The Court deemed the limitations period to start when De Lucia's malpractice accrued, which was May 14, 2009, the day De Lucia was brought to Mount Gay Hospital. See id. However, N.Y. C.P.L.R. § 208 provides, "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and . . . if the time otherwise limited is less than three years, the time shall be extended by the period of disability." La Russo does not dispute that she filed her claims after the limitations period of two and one-half years for her malpractice claim had run. She argues that the statute of limitations should be tolled because of De Lucia's insanity for at least two days, apparently referring to May 14 and 15, the day De Lucia was brought to Mount Gay Hospital and the next day when his father observed his condition at the hospital. Two days of De Lucia's insanity would have extended the limitations period

-16-

to November 16, 2009, in which event the summons, filed on November 15, 2009, would have been timely by one day.

In ruling that La Russo's claim was time-barred, the District Court did not initially apply the requirement of section 208 that in the event of insanity "the time shall be extended by the period of disability." Instead, the Court first ruled that the insanity toll did not apply because De Lucia "did not continuously experience a total 'inability to function in society' during the relevant time period." Dist. Ct. Op., 936 F. Supp. 2d at 300 (quoting McCarthy v. Volkwagen of America, Inc., 55 N.Y.2d 543, 548 (1982) (emphasis in original). The District Court understood the relevant time period to be the two and one-half years limitations period starting from the date the cause of action accrued, i.e., May 14, 2009.[4] The Court derived the

_____

[4] The District Court stated:

Defendant argues, and Plaintiff appears to concede, that the malpractice cause of action accrued, at the latest, when De Lucia was transferred to Mount Gay, which occurred no later than May 14, 2009. Mot. to Dismiss 9-10, 14. Thus, the latest date on which the two and one-half years limitations period could have expired was November 14, 2011, one day prior to the filing of the summons in state court. Id. To satisfy the standard for insanity under CPLR 208, Plaintiff would therefore have to allege that De Lucia continuously experienced an "over-all inability to function in society" during the period between May 14, 2009 and November 14, 2011.

Dist. Ct. Op., 936 Supp. 2d at 299 (second emphasis added).

requirement of "continuous" insanity from <u>de los Santos v. Fingerson</u>, No. 97 Civ. 3972, 1998 WL 740851, at *3 (S.D.N.Y. Oct. 23, 1998). <u>See</u> <u>Dist. Ct. Op.</u>, 936 F. Supp. 2d at 298.

Although <u>de los Santos</u> stated that "the insanity alleged under § 208 must be found to be continuous," 1998 WL 740851, at *3 (citing <u>Graboi v. Kibel</u>, 432 F. Supp. 572, 579 (S.D.N.Y. 1977)), it did not require "continuous" insanity throughout the limitations period, as did the District Court here. Instead, <u>de los Santos</u> said the time within which the action must be commenced runs from "'after the disability ceases.'" <u>Id.</u> (quoting N.Y. C.P.L.R. § 208). <u>Graboi</u>, cited by <u>de los Santos</u>, also said that the period of insanity must be continuous, citing <u>Jordan v. State</u>, 56 Misc. 2d 1032, 290 N.Y.S.2d 621 (Ct. Claims 1968), but did not indicate the relevant time period in which the insanity must be continuous.[5] It is from <u>Jordan</u> that we learn the time period in which insanity must be continuous to toll the limitations period of section 208.

---

[5] <u>Graboi</u> also cited <u>Schwartzberg v. Teacher's Retirement Bd.</u>, 70 N.Y.S.2d 770 (Sup. Ct. 1947), <u>rev'd on other grounds</u>, 273 App. Div. 240, 76 N.Y.S.2d 448 (1st Dep't 1948), <u>aff'd</u>, 298 N.Y.2d 395, 373 N.Y.S.2d 39 (1975), but that case involved the different question of whether a person's mental illness during confinement in a mental institution continued with sufficient severity after her discharge to render her incompetent to execute a document.

Jordan concerned tolling that resulted from incarceration. After an initial incarceration, the plaintiff was released and again incarcerated. The issue was whether the second period of incarceration tolled the limitations period. The Court ruled that it did not, at least where the interval during which the plaintiff was able to pursue a claim after the first incarceration was substantial. 290 N.Y.S.2d at 625-26. Interestingly, this principle was based on an early Kentucky case involving successive periods of insanity. See Duncan v. Vick, 7 Ky. L. Rptr. 756 (Ky. 1886).

Thus, the holding of Jordan, the ultimate case law source of the requirement that insanity must be continuous, means that a tolling disability ceases to toll if interrupted by an interval in which there was no disability. Jordan makes clear that "where a disability existing at the time of the accrual of the cause of action is removed the statute will then run and will not be suspended by any subsequent intervening disability." 290 N.Y.S.2d at 626; see McCarthy, 55 N.Y.2d at 546 ("[T]he limitations period in a personal injury action will be extended to three years after the disability ceases."); Washington v. Doe, No. 08 CV 4399, 2011

WL 679919, at *2 (E.D.N.Y. Feb. 16, 2011) ("Under this continuity requirement, a lucid interval of any significant duration stops the toll.").

When the District Court ruled that De Lucia's insanity was not continuous throughout the interval from May 14, 2009, until November 14, 2011, it pointed to periods of unquestioned lucidity after De Lucia's release from Mt. Gay Hospital. See Dist. Ct. Op., 936 F. Supp. 2d at 299-300. But the Court did not initially consider La Russo's claim that De Lucia was insane for at least two days of hospitalization, May 14 and 15, a claim that, if true, would have rendered his lucidity after May 15 irrelevant. If De Lucia was insane for at least those two days, section 208 would have extended the limitations period by two days.

Although misinterpreting the time period in which insanity must be continuous, the District Court went on to rule that for the entire two and one-half years period from May 14, 2009, De Lucia was not insane within the meaning of section 208. See id. at 300. If this ruling, which covers May 14 and 15, is sustainable, the error with respect to the requirement of continuous insanity from the date the cause of action accrued is of no consequence.

New York construes insanity as used in N.Y. C.P.L.R. § 208 narrowly. McCarthy, the leading New York case on the definition of insanity in section 208 held that "the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." 55 N.Y.2d at 548, 450 N.Y.S.2d 457. Courts have noted that the statute "speaks in terms of insanity, not merely mental illness," and "apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom or mental illness alone have been held to be insufficient to invoke the [insanity] toll." See de los Santos, 1998 WL 740851, at *4 (citing Wenzel v. Nassau Cnty. Police Dep't, No. 93 Civ. 4888(ADS), 1995 WL 836056, at *4 (E.D.N.Y. Aug. 5, 1995) (citing cases)) (internal quotation marks omitted); see also Sanders v. Rosen, 159 Misc.2d 563, 605 N.Y.S.2d 805, 814 (N.Y. Sup. Ct. 1993) ("The Court of Appeals [has] made it quite plain that apathy, depression and neurosis are not so disabling as to toll the Statute of Limitations."). In determining the applicability of the insanity toll, it is appropriate to "focus on the plaintiff's conduct and activities." Dumas v. Agency for

<u>Child Development</u>, 569 F. Supp. 831, 834 n. 5 (citing cases). "Difficulty in functioning is not sufficient to establish insanity for purposes of § 208; rather, the plaintiff must be totally unable to function as a result of a 'severe and incapacitating' disability." <u>Swartz v. Berkshire Life Ins. Co.</u>, No. 99 Civ. 9462, 2000 WL 1448627, at *5 (S.D.N.Y. Sept. 28, 2000) (citation omitted).

Applying New York's strict standard to the interval that included May 14 and 15, the District Court stated:

> [A]ssuming <u>arguendo</u> that De Lucia's mental condition <u>upon his admission to Mount Gay</u> was continuous throughout the relevant period, the Court finds that Plaintiff's allegations do not establish a disability so "severe and incapacitating" that it rendered De Lucia "totally unable to function." <u>Swartz</u>, 2000 WL 1448627, at *5. The only allegations Plaintiff makes regarding De Lucia's mental state during the relevant period is that he was "disoriented, sickly, and had been aimlessly wandering on and off the St. George's campus," and that during his stay at Mount Gay, he appeared "incoherent due to overdosing of Haldol and other drugs" and "frightened" touched by an aggressive patient. Compl. ¶¶ 28, 35–37, 43. These allegations are insufficient as a matter of law to satisfy the very high standard required to invoke tolling for insanity" under CPLR 208. See, e.g., <u>Callahan v. Image Bank</u>, 184 F.Supp.2d 362, 363–64 (S.D.N.Y.2002) (holding that allegations that plaintiff was "unable to work or care for herself," "unable to leave her home unescorted," "experienced severe side effects from medication and

black-outs ... experienced a period of hospitalization ... arising from [ ] depression," and "suffers from suicidal ideation" were insufficient to satisfy the standard for tolling under CPLR 208); Dumas, 569 F. Supp. at 833 (holding that diagnosis of "schizophrenia, paranoid, chronic with acute exacerbation" did not result in tolling under CPLR 208, as plaintiff's disability "was not of the severe and incapacitating nature contemplated by the tolling statute," and noting that "[t]he statute speaks in terms of insanity, not merely mental illness"); Eisenbach, 62 N.Y.2d at 974, 479 N.Y.S.2d 338, 468 N.E.2d 293 (holding that plaintiff's hospitalization during which strong painkillers were administered resulting in plaintiff being "generally confused, disoriented, and unable to effectively attend to [his] affairs" did not rise to the level of insanity under CPLR 208). Moreover, to the extent that Plaintiff's allegations suggest that De Lucia suffered from an unidentified "mental illness" which required him to undergo "continuous psychiatric care since his return from Grenada in May 2009," Compl. ¶ 69, case law is clear that mental illness alone is insufficient to invoke the insanity toll. See de los Santos, 1998 WL 740851, at *4.

Dist. Ct. Op., 936 F. Supp. 2d at 300 (emphasis added) (footnote omitted).

In making this ruling, the District Court resolved no factual disputes, instead taking the relevant facts from La Russo's complaint and applying New York's strict legal standard for section 208 insanity. Our review is therefore de novo. See, e.g., Achtman v. Kirby, McInerey & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006). Upon such review, we see no error. Nearly all

-23-

of La Russo's allegations concerning the scene at the hospital recount deficient conditions of confinement, not De Lucia's insanity.  The only allegation of his inability to function, that he was "incoherent," attributed this temporary difficulty to excessive medication.  Furthermore, we see merit in the opinion of then-District Judge Chin in <u>Luciano v. City of New York</u>, 684 F. Supp. 2d 417, 422 (S.D.N.Y 2010), which declined to apply an insanity toll where the plaintiff's inability to function persisted for only a day at the beginning of the limitations period.  As the District Court here noted,

> [A]lthough not determinative of the issue, the fact that Plaintiff filed the summons on November 15, 2011, one day after the statute of limitations had run, suggests that the one-day lapse was due to mere oversight or mistake, rather than De Lucia's inability to "protect [his] legal rights because of an over-all inability to function in society." <u>McCarthy</u>, 55 N.Y.2d at 548.

<u>Dist. Ct. Op.</u>, 936 F. Supp. 2d at 300 n.6.

The District Court properly determined the medical malpractice claim to be untimely.

III. The Contract and Negligence Claims

Finally, La Russo contends that her contract and negligence claims are not barred because the statute of limitations period

-24-

is longer for these causes of action and they are not duplicative of her psychiatric malpractice claim. We disagree, as did the District Court.

With regard to the contract claim, "[t]he law is clear that a breach of contract claim arising out of the rendition of medical services by a physician will withstand a test to its legal sufficiency only where it is based upon an express special promise to effect a cure or to accomplish some definite result." Monroe v. Long Island College Hospital, 84 A.D.2d 576, 576, 443 N.Y.S.2d 433, 434 (N.Y. App. Div. 2d Dep't 1981). La Russo fails to allege any such "special promise." The district court correctly concluded that SGU Med.'s promotional and information materials did not promise a specific course of treatment or provide the basis for a breach of contract claim. See Catapano v. Winthrop University Hospital, 19 A.D.3d 355, 355, 796 N.Y.S.2d 158, 159 (N.Y. App. Div. 2d Dep't 2005) ("[P]rovisions of the 'Patients Bill of Rights' do not constitute the requisite 'express promise' or special agreement with the patient so as to furnish the basis for a breach of contract claim."). As such, La Russo's contract claim is essentially a malpractice action and like the psychiatric malpractice claim, it is time-barred. See

<u>Hazel v. Montefiore Medical Center</u>, 243 A.D.2d 344, 345, 663 N.Y.S.2d 165, 165 (N.Y. App. Div. 1st Dep't 1997) (claims that are "merely reformulations" of malpractice claims were properly dismissed as time-barred where malpractice claim was time-barred).

Similarly, La Russo's negligence claim is merely a reformulation of her medical malpractice claim. "When the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." <u>Stanley v. Lebetkin</u>, 123 A.D.2d 854, 854, 507 N.Y.S.2d 468, 468 (N.Y. App. Div. 2d Dep't 1986). La Russo alleges that agents of SGU Med., including De Lucia's faculty advisor "negligently failed to use due care in the performance of their duties" by failing to refer De Lucia to counseling or medical treatment and failing to provide him with proper psychiatric care and medical treatment. These alleged failures are substantially related to medical treatment and as such, are duplicative of the medical malpractice claims. In sum, the District Court's rulings on La Russo's contract and negligence claims were correct.

## Conclusion

The judgment of the District Court is affirmed.

-26-